Fuchsberg, J.
Plaintiff brought this shareholder’s derivative action without first making a demand upon the corporation’s board of directors to secure initiation of an action in favor of the corporation or otherwise to remedy the acts of which he complains. He alleges that a demand would have been futile because the board of directors participated in, authorized and approved the challenged acts and its members are themselves subject to liability and, therefore, cannot be expected to vote to sue themselves.
Three of the defendants moved to dismiss the complaint on the ground that the reasons offered in justification of the failure to make a demand are insufficient under subdivision (c) of section 626 of the Business Corporation Law. The issue is whether allegations of board participation in and approval of acts involving bias and self-dealing by minority "affiliated” directors and breach of fiduciary duties of due care and diligence by the remaining majority "unaffiliated” directors through their participation and approval, though there is no claim of self-dealing as to them, are sufficient to withstand a motion to dismiss for failure to make a demand.
Subdivision (c) of section 626 of the Business Corporation Law provides that, in any shareholder’s derivative action brought in the right of the corporation to procure judgment in its favor, "the complaint shall set forth with particularity the efforts of the plaintiff to secure the initiation of such action by the board or the reasons for not making such effort.”
The Supreme Court denied the motion to dismiss and the Appellate Division, one Justice dissenting, affirmed. This appeal is before us pursuant to leave granted by the Appellate Division upon the certified question whether the affirmed order denying the motion to dismiss was properly made.
For reasons which follow, we have concluded that the question should be answered in the affirmative and the deter *374 minations denying appellants’ motion to dismiss should, therefore, be upheld.
Plaintiff, a shareholder of Talcott National Corporation ("Talcott”), brought this shareholder’s derivative action[1] against defendants Gulf & Western Industries ("Gulf & Western”), Associates First Capital Corporation ("First Capital”), a subsidiary of Gulf & Western, and 16 Talcott directors. Five of those 16 are affiliated with Talcott in official capacities in addition to their positions as directors. Defendant Silverman is chief executive officer as well as chairman of the board of directors. Defendant Wackman is Talcott’s president, defendant Campbell the senior executive vice-president, defendant Kelsey executive vice-president, and defendant Remis the president and chief executive officer of Beggs & Cobb, Inc. ("Beggs”), a wholly-owned subsidiary of Talcott. These affiliated directors, characterized as the "controlling defendants” in the complaint, are alleged to have dominated and controlled Talcott and its board of directors.
The remaining 11 defendants are not alleged to be affiliated with Talcott otherwise than in their capacity as directors. In the complaint they are characterized as "men of affairs actively engaged in the pursuit of their own substantial business interests”, and hereinafter will be referred to as the unaffiliated directors. They are alleged to have failed to exercise their independent judgment as directors. The complaint also alleges that the individual defendants constitute the present members of Talcott’s board of directors, and were directors at the time of the contested acts.[2]
The motion to dismiss the complaint was made by defend *375 ants Wackman, Campbell and Kelsey (appellants herein), three of the affiliated directors. Since their motion goes to the sufficiency of the complaint, plaintiff’s allegations must be described in some detail. We note at the outset the well known principle that on a motion to dismiss for failure to state a cause of action every fact alleged must be assumed to be true and the complaint liberally construed in plaintiff’s favor (see, e.g., Sage v Culver, 147 NY 241, 245; see, also, Papilsky v Berndt, 59 FRD 95, 97, app dsmd 503 F2d 554.)
According to the complaint, Talcott is engaged through its various subdivisions in the fields of commercial, industrial and real estate financing, product and equipment manufacturing, insurance, and leather processing. It is alleged that in late 1972 defendant Gulf & Western determined to acquire control of Talcott because Talcott’s finance-related business (principally operated by its 93% owned subsidiary, James F, Talcott, Inc.) represented a potential valuable expansion of the finance business conducted by Gulf & Western’s wholly-owned subsidiary, defendant First Capital. This led to an "agreement in principle” for the merger of Talcott into Gulf & Western at a value of $24 per Talcott share. The agreement was approved by the board of directors of each corporation. Thereafter, plaintiff asserts, the affiliated directors, in return for certain pecuniary and other personal benefits, entered into a "plan and scheme” with Gulf & Western to help it obtain control over Talcott on an altered basis substantially less favorable to Talcott and its shareholders than the previously approved merger proposal.
Various actions are claimed to have been taken pursuant to this scheme, not only by the individual affiliated directors and the corporate defendants but also by Talcott’s board itself. (1) The Talcott-Gulf & Western merger was abandoned by Talcott’s board of directors and in its place was substituted a tender offer by First Capital of $20 per Talcott share. Talcott’s board of directors is claimed to have approved this tender offer as "fair and reasonable” and recommended it to Talcott’s common shareholders. The complaint alleges that "[s]uch approval and recommendation were not in the exercise of an honest business appraisal of the tender offer but was [sic] made for the benefit of G & W and the controlling defendants.” (2) Nine Talcott officers, three of whom are presently directors, entered into favorable new employment contracts with James F. Talcott, Inc., Talcott’s coveted finance-related *376 subsidiary and the principal object of the proposed acquisition of Talcott. These contracts were authorized by Talcott’s board of directors. (3) If the tender offer proved successful and First Capital acquired control of Talcott, defendant Silverman (Talcott’s board chairman and chief executive), in addition to his $125,000 approved annual salary with Talcott, was to become vice chairman of First Capital under a five-year employment contract providing an annual salary of $60,000; for the following five years he was to be denominated a consultant under an arrangement with First Capital, providing for an aggregate compensation of $275,000. (4) Gulf & Western and First Capital agreed to pay an allegedly excessive finder’s fee of $340,-000 in connection with the tender offer to a corporation whose executive vice-president was defendant Silverman’s son. (5) Talcott’s board of directors decided to sell Talcott’s nonfinance-related subsidiary, Beggs. The complaint alleges that "[s]aid decision was in disregard of the interests of Talcott and its shareholders, who would be greatly harmed thereby, and was taken solely to accommodate G & W, which was interested in acquiring only the finance related business of Talcott.” Pursuant to this board decision, the affiliated directors allegedly caused Talcott to sell Beggs for $7,000,000 cash, and to repurchase for $13,100,000 Series D Preferred Shares which Talcott had originally issued when it acquired Beggs. These related transactions to accomplish the sale of Beggs are said to have resulted in a $6,100,000 net loss to Talcott.
The complaint goes on to assert that the "controlling defendants”, the six affiliated directors, including the three appellants, have breached their fiduciary obligations to Talcott in return for personal benefits, have failed to exercise due care, skill and diligence in the conduct of Talcott’s affairs and have wasted its assets. The complaint then alleges that "the other defendants, as directors of Talcott, by participating in, authorizing or approving the acts and transactions complained of, have breached their fiduciary duties to Talcott and its shareholders, have failed to exercise due care and diligence in discharging their duties, and have wasted Talcott’s assets.”
Specifically relevant to the matter at issue in this case is paragraph 25 of the complaint which alleges: "Plaintiff has made no demand on the Board of Directors of Talcott to take action with respect to the wrongs herein alleged since the majority of the Talcott Board of Directors participated in, authorized, and approved the acts and transactions com *377 plained of herein and are liable therefor. Said directors are defendants in this action. They cannot be expected to vote to prosecute an action against themselves. By reason of the foregoing, such demand would be futile and is therefore unnecessary.”
On behalf of Talcott (see n 1, supra) the complaint seeks judgment directing defendants to account to Talcott for profits they gained by reason of the acts alleged and for damages sustained by Talcott. It also seeks to enjoin the defendants from effectuating the employment and consulting agreements already described as well as to enjoin Gulf & Western and First Capital from voting any shares acquired in the tender offer and exercising any control over Talcott.
Appellants claim that the challenged acts are "plainly corporate” and at most indicate erroneous business judgments which as a matter of law are not wrongful.
In affirming the Supreme Court’s denial of appellants’ motion to dismiss, the Appellate Division stated that a demand is excused "where the board itself is accused of patent breach of its fiduciary duties and its members are named as parties defendant”. We agree. Liberally construed, the complaint alleges acts for which a majority of the directors may be liable and plaintiff reasonably concluded that the board would not be responsive to a demand. In our view, this conclusion finds support in the history and purposes of the demand rule in shareholder derivative suits, in the liberal rules of pleading and in the law of corporate directors’ liability for breach of duty.
Though the demand requirements stated in subdivision (c) of section 626 of the Business Corporation Law were enacted on the basis of part of former rule 23 (subd [b]) (now rule 23.1) of the Federal Rules of Civil Procedure (McKinney’s Cons. Laws of NY, Book 6, Business Corporation Law, § 626, subd [c], Legislative Studies and Reports), the statute actually codifies an early rule of equity in shareholder derivative actions. (See, e.g., Robinson v Smith, 3 Paige Ch 222, 233; Brinckerhoff v Bostwick, 88 NY 52, 59-60, writ of error dsmd 106 US 3; Sage v Culver, 147 NY 241, 245-247). The rule was sometimes stated as a strict pleading requirement (see, e.g., Greaves v Gouge, 69 NY 154, 157; Hawes v Oakland, 104 US 450, 461), and has been codified as such in New York ("the complaint shall set forth with particularity” [Business Corporation Law, § 626, subd (c); italics supplied]).
*378 The requirement of demand, or of sufficient explanation for failure to make one, derives from one of the basic principles of corporate control—that the management of the corporation is entrusted to its board of directors (Business Corporation Law, § 701), who have primary responsibility for acting in the name of the corporation and who are often in a position to correct alleged abuses without resort to the courts. Their authorization of a particular corporate act, if made in their considered opinion that it is in the best interests of the corporation, and fair to the corporation, will not be interfered with by the courts (Chelrob, Inc. v Barrett, 293 NY 442, 449, 460). A corrolary foundation for the requirement is that it serves the interests of judicial economy since a demand may often result in corrective action short of suit and, thereby, not only relieve the courts from entanglement in the management of internal corporate affairs, but also protect them from vain rulings on challenged acts which are later ratified by the board. (See, generally, Foss v Harbottle, 2 Hare 461, 492-494, 67 Eng Rep 189, 203-204; Hawes v Oakland, 104 US 450, supra.) The demand requirement also affords corporate directors reasonable protection from the harassment of litigious dissident shareholders who might otherwise contest decisions on matters clearly within the directors’ discretion. Finally, the requirement is additionally designed to discourage "strike suits” by shareholders making reckless charges for personal gain rather than corporate benefit. (Cf. Surowitz v Hilton Hotels Corp., 383 US 363, 371.) (For discussions of the purposes of the demand requirement see, generally, Ann., 48 ALR3d 595, 606-607; Note, 73 Harv L Rev 746 et seq.)
It is clear then that the demand is generally designed to weed out unnecessary or illegitimate shareholder derivative suits. This prophylactic device assuredly should not be allowed to frustrate the true derivative suit, the very thing it was designed to protect. (See Dykstra, Revival of the Derivative Suit, 116 U of Pa L Rev 74; see, also, Prunty, Shareholders’ Derivative Suit, 32 NYU L Rev 980.)
Accordingly, a futile demand need not be made. Chancellor Walworth of New York’s early Court of Chancery stated what may be regarded as one of the guidelines for determining futility in the famous case of Robinson v Smith (3 Paige Ch 222, 233, supra), as follows: "if it appeared that the directors of the corporation refused to prosecute by collusion with those who had made themselves answerable by their negligence or *379 fraud, or if the corporation was still under the control of those who must be made the defendants in the suit, the stockholders, who are the real parties in interest, would be permitted to file a bill in their own names, making the corporation a party defendant.” (Emphasis added.)
The basic question is whether from the particular circumstances of the liability charged it may be inferred that the making of such a demand would indeed be futile. Thus, it is well established that a demand will be excused where the alleged wrongdoers control or comprise a majority of the directors. (See, e.g., Ripley v International Rys. of Cent. Amer., 8 AD2d 310, affd 8 NY2d 430; Steinberg v Altschuler, 158 NYS2d 411.) And, while justification for failure to give directors notice prior to the institution of a derivative action is not automatically to be found in bare allegations which merely set forth prima facie personal liability of directors without spelling out some detail, such justification may be found when the claim of liability is based on formal action of the board in which the individual directors were participants.
It is not sufficient, however, merely to name a majority of the directors as parties defendant with conclusory allegations of wrongdoing or control by wrongdoers. This pleading tactic would only beg the question of actual futility and ignore the particularity requirement of the statute. The complaint here does much more than simply name the individual board members as defendants. It sets out, with particularity, a series of transactions allegedly for the benefit of Gulf & Western and the affiliated directors. Though there are no allegations that the unaffiliated directors personally benefited from the transactions, they are claimed to have disregarded Talcott’s interests for the sole purpose of accommodating Gulf & Western, which, in turn, would allegedly reciprocate by promoting the self-interest of the affiliated directors. Acting officially, the board, qua board, is claimed to have participated or acquiesced in assertedly wrongful transactions.
Considered most favorably to the plaintiff the board’s acts, as a necessary part of a series of intertwined events and agreements which benefited the affiliated directors rather than Talcott, cannot be regarded as immune from question in a shareholder’s derivative action as a matter of law. If true, the allegations of the complaint—the circumstances surrounding the board’s approval of the tender offer for First Capital’s acquisition of control over Talcott, including the employment *380 and finders fee agreements and the substantial financial emoluments which were to accrue to defendant board chairman and chief executive Silverman, and the sale of Beggs, the allegedly profitable nonfinance subsidiary at a six million dollar loss to Talcott—state a cause of action against the defendants, including the unaffiliated directors, for breach of their duties of due care and diligence to the corporation. Plaintiff may prove that the exercise of reasonable diligence and independent judgment under all the circumstances by the unaffiliated directors, at least to meaningfully check the decisions of the active corporate managers, would have put them on notice of the claimed self-dealing of the affiliated directors and avoided the alleged damage to Talcott. If the unaffiliated directors abdicated their responsibility, they may be liable for their omissions. Taking their potential liability from the face of the complaint, plaintiff’s failure to make a demand on the board was warranted.
We reject appellants’ proposition that allegations of directorial fraud or self-interest is, in every case, a prerequisite to excusing a derivative shareholder from making a demand upon the board. (Compare, e.g., Matter of Kauffman Mut. Fund Actions, 479 F2d 257, 265, cert den 414 US 857; but see concurring opn of Chief Judge Coffin;[3] see, also, 8 Suffolk U L Rev 287.) Directors undertake affirmative duties of due care and diligence to a corporation and its shareholders in addition to their obligation merely to avoid self-dealing. That unaffiliated directors may not have personally profited from challenged actions does not necessarily end the question of their potential liability to the corporation and the consequent unlikelihood that they would prosecute the action. "No custom or practice can make a directorship a mere position of honor void of responsibility, or cause a name to become a substitute for care and attention. The personnel of a directorate may give confidence and attract custom; it must also afford protec *381 tion.” (Kavanaugh v Commonwealth Trust Co., 223 NY 103, 106.) Of course, the degree of care and diligence to be exercised (see Business Corporation Law, § 717) will depend upon the subjects to which it is to be applied and the particular facts of each case. But the so-called "business judgment” rule (cf. Pollitz v Wabash R. R. Co., 207 NY 113, 124) urged by appellants has not drained the traditional duties of prudence and diligence of all their contemporary validity and force. (Cf. Hun v Cary, 82 NY 65, 73-74; Kavanaugh v Commonwealth Trust Co., supra; Matter of Cohen v Cocoline Prods., 309 NY 119,123.)
This case does not require us to delimit the boundaries of a director’s affirmative duties to the corporation which he undertakes to serve. We regard it as sufficient to reiterate the long-standing rule that he does not. exempt himself from liability by failing to do more than passively rubber-stamp the decisions of the active managers. (See, generally, Dyson, Director’s Liability for Negligence, 40 Ind LJ 341; Feuer, Liabilities of Directors and Officers, 5 NYL Forum, 127, 235; Symposium on Corporate Responsibility, 10 Col J Law & Soc Prob 15, 18-28; Ann., 25 ALR3d 941, 1001-1022.) As a consequence, a derivative shareholder’s complaint may, in a particular case, withstand a motion to dismiss for failure to make a demand upon the board, even though a majority of the board are not individually charged with fraud or self-dealing. Particular allegations of formal board participation in and approval of active wrongdoing may, as here, suffice to defeat a motion to dismiss. We believe the better approach in these cases is to rest the determination of the necessity for a demand in the sound discretion of the court to which the issue is first presented,[4] to be determined from the sufficiency of the complaint, liberally construed.
We hold, therefore that, in light of the allegations of the complaint, the Supreme Court did not abuse its discretion in finding substantial compliance with subdivision (c) of section 626 of the Business Corporation Law and in denying appellants’ motion to dismiss for failure to make a demand on the board of directors. The certified question should be answered in the affirmative.
*382 Judges Jasen, Gabrielli, Jones, Wachtler and Cooke concur; Chief Judge Breitel taking no part.
Order affirmed, with costs. Question certified answered in the affirmative.

. Plaintiff also seeks relief in a representative capacity on behalf of himself and other similarly situated Talcott shareholders. The parties and the courts below have treated the action as derivative for purposes of determining plaintiff’s compliance with the demand requirements of subdivision (c) of section 626 of the Business Corporation Law since those requirements are imposed only for derivative-type suits. Since this case is before us in the posture of a motion to dismiss the complaint, in view of our disposition it is unnecessary for us to explore the distinctions between derivative and "individual” or "representative” shareholder suits (see 2 Hornstein, Corporation Law and Practice, §§ 601-603; see, also, 3B Moore, Federal Practice [2d ed], par 23.1.16, subd [1]). Thus, we also have treated the complaint only in its derivative aspect.

. Appellants’ affidavit in support of their motion to dismiss states that two additional persons not mentioned in the complaint or named as defendants "were and are members of the Board of Directors of Talcott”. If so, the complaint still names a majority of the directors — 16 of the possible 18 persons who are presently directors and who were also directors at the time of the challenged acts.

. In his concurring opinion, Chief Judge Coffin made the following cogent observations: "Moreover, these are times when corporations are exceeding in size and impact even the giantism of the past, when new layers and dimensions of corporate obligation are being recognized, and when the importance of directorate oversight of the management technocracy is greater than ever. A higher degree of professionalism, sensitivity, and scrutiny may fairly be expected on the part of directors today than in a simpler era. I am therefore reluctant, by resort to formula, to set boundaries to the action or inaction of directors, beyond which demand on them shall always be required.” (479 F2d 257, 268.)

. This seems to be the preferred approach in the Federal courts (see 3B Moore, Federal Practice [2d ed], par 23.1.19; see, e.g., Herpich v Wallace, 430 F2d 792, 802; Fields v Fidelity Gen. Ins. Co., 454 F2d 682, 685).