■ WILLIAM ISELIN & Co., INC., Plaintiff, v MUHLSTOCK, ELOWITZ & Co., Defendant. GOLD MILLS, INC., Appellant, v GEORGE MUHLSTOCK et al., Re-

spondents. FUTURA FABRICS CORPORATION, Appellant, v GEORGE MUHLSTOCK et al., Respondents.—Judgment, Supreme Court, New York County, entered on July 5, 1973, in favor of defendants after trial before a jury in consolidated actions seeking damages for malpractice of accountants, affirmed, with $60 costs and disbursements to respondents. It cannot be said that the verdict was contrary to the weight of evidence as claimed by the appellants. The testimony and evidence submitted to the jury was not such that reasonable men could not have reached the jury's verdict *(Buemi v Mariani,* 41 AD2d 1002). In its charge to the jury the trial court adhered meticulously to the law as set forth in *State St. Trust Co. v Ernst* (278 NY 104), distinguishing between mere negligence by an accountant which restricts the possibility of a cause of action to the clients of the accountant and gross negligence amounting to fraud which could give rise to a cause of action by third parties. To this charge appellants took no exception. After reporting a verdict for the defendants, the forelady of the jury gratuitously stated that the jury was unable to "agree on a verdict of fraud" but that they believed "that the financial statements were materially misleading." This "finding" cannot be equated with an implicit finding of fraud as suggested by our dissenting colleague who concludes that the verdict should be set aside as contrary to the weight of the credible evidence. In view of the failure of appellants to except to the charge, that charge became the law of the case, and thus there is no need for this court, as requested by appellants, to enunciate a new rule clarifying *State St.* so as to impose a new standard of professional competence that would result in liability for "gross negligence" short of fraud. The Court of Appeals has indicated no dissatisfaction with the rules pertaining to accountants' liability first expressed in *Ultramares Corp. v Touche* (255 NY 170), and as later modified in *State St.,* and therefore any change in the rules should await action by the Court of Appeals in an appropriate case. Concur—Murphy, J. P., Birns and Lynch, JJ.; Lane, J., dissents in the following memorandum: The defendant, Muhlstock, Elowitz & Co., an accounting firm, had prepared financial statements of the firm of Wash-Tex, Inc. The plaintiffs, Futura Fabrics Corporation and Gold Mills, Inc., in reliance on those statements, advanced moneys to Wash-Tex. At issue in this case is whether or not there was sufficient evidence to hold Muhlstock liable for the losses incurred as a result of that reliance. The case was submitted to the jury, without objection, on the basis of the teachings of the seminal case of *State St. Trust Co. v Ernst* (278 NY 104). The rule as articulated in *State St.* provides (pp 111–112): "In the absence of a contractual relationship or its equivalent, accountants cannot be held liable for ordinary negligence in preparing a certified balance sheet even though they are aware that the balance sheet will be used to obtain credit. *(Ultramares Corp. v Touche,* 255 NY 170.) Accountants, however, may be liable to third parties, even where there is lacking deliberate or active fraud. A representation certified as true to the knowledge of the accountants when knowledge there is none, a reckless misstatement, or an opinion based on grounds so flimsy as to lead to the conclusion that there was no genuine belief in its truth, are all sufficient upon which to base liability. A refusal to see the obvious, a failure to investigate the doubtful, if sufficiently gross, may furnish evidence leading to an inference of fraud so as to impose liability for losses suffered by those who rely on the balance sheet. In other words, heedlessness and reckless disregard of consequence may take the place of deliberate intention". The facts in the case at bar, highlighted by the specific finding of the jury that the financial statement was "materially misleading," lead me to conclude that the verdict reached was against the

weight of the credible evidence. Muhlstock, in preparation of the financial statement, failed to verify independently the cash account, which verification would have revealed a shortage; failed to confirm the amount due from factors by direct correspondence; failed to confirm inventory; and failed properly to confirm accounts payable and receivable (since the former were understated and the latter overstated). Furthermore, Wash-Tex dealt primarily in the purchase of raw materials, known as greige goods, converting these items to a finished fabric, and selling the finished product to garment manufacturers. The profits of Wash-Tex were tied to the sale of finished goods, although it also sold greige goods. Muhlstock reported separately to Wash-Tex as to the sales of greige versus finished goods but knowingly combined the sales of both under one heading (Sales) on the December 31, 1962 financial statement. The net result of this unorthodox accounting maneuver was to mislead the plaintiffs into believing that the sales of Wash-Tex of its finished product were $5,365,531. As a matter of fact, more than one half of these sales were of raw materials (greige goods) which were purchased by Wash-Tex from greige-goods manufacturers for the purpose of converting the same into a finished fabric for ultimate sale by Wash-Tex to garment manufacturers. Indeed, a substantial portion of the greige goods were sold at a loss. Muhlstock's reporting method also concealed the fact that 22% of the finished goods sold were returned to Wash-Tex when, industry-wide, 5% was considered high. In addition, the subordinated loan account, representing a capital investment by principals of the corporation, was misstated. This loan was demonstrated not to be available for corporate purposes but was reflected on the books only immediately before the preparation of the statement by Muhlstock, of which Muhlstock must have been aware since its own work papers revealed a deposit of funds at the end of December and withdrawal of these same funds in the first week of January. The use of an accepted auditing device known as a cash cut-off statement, which is a midmonth bank statement, would have revealed that the moneys deposited were withdrawn immediately after the statement date. The failure to use a cut-off statement by Muhlstock resulted in an improper confirmation by them of cash on hand and the viability of the subordinated loan. Other items of which Muhlstock must have been aware were transactions in December, 1962, valued at close to $50,000, involving companies wholly controlled by Wash-Tex. Wash-Tex had never engaged previously in such large transactions with its controlled corporations. In one of the transactions, the goods were resold to Wash-Tex within two months of the sale. In the other transaction, payment to Wash-Tex was not made. The recording of these intercompany transactions as bona fide and arm's-length resulted in the appearance of an increase in accounts receivable and a reduction in inventory. Muhlstock was the accountant for all the corporations involved and therefore must have had knowledge of the nature of the transactions and their purpose vis-à-vis the financial statement which was being prepared. These instances, albeit merely outlined in this dissent, reflect "A refusal to see the obvious" and "a failure to investigate the doubtful" sufficiently gross to lead to an inference of fraud (State St. Trust Co. v Ernst, 278 NY 104, 112). Implicit in the jury verdict is their finding that the plaintiffs relied on the "materially misleading" statement of Muhlstock. For the jury not to have inferred fraud based on these facts and not to award a verdict in favor of the plaintiffs is patently against the weight of the credible evidence. Accordingly, the judgment of the Supreme Court, New York County, entered after a jury trial in favor of the defendants, should be reversed, on the law and the facts, and a new trial ordered.