# (June 28, 1984)

■ EUROPEAN AMERICAN BANK AND TRUST COMPANY, Appellant, v STRAUHS & KAYE et al., Respondents. — Order of the Supreme Court, New York County (Burton S. Sherman, J.), entered December 27, 1983, which granted defendant's motion to dismiss the complaint pursuant to CPLR 3211 (subd [a], par 7) for failure to state a cause of action is unanimously reversed, on the law, with costs, the motion denied, and the complaint reinstated. ¶ In this action by the plaintiff European American Bank (EAB) against the defendants Strauhs & Kaye, a partnership accounting firm, and Carl F. Strauhs and Bernard Kaye, the individual partners (collectively Strauhs & Kaye), for damages resulting from the negligent preparation of financial statements and performance of auditing and accounting services for Majestic Electro and its subsidiaries, Special Term granted Strauhs & Kaye's motion to dismiss the complaint for failure to state a cause of action. The court relied on the rule that in "the absence of fraud, an accountant's liability for negligence is bounded by contract and is to be enforced between the parties by whom the contract has been made". (See *Ultramares Corp. v Touche,* 255 NY 170.) Finding that there

were no allegations in the complaint that these defendants had any contractual relationship with the plaintiffs, Special Term, under the authority of *Ultramares Corp. v Touche* (255 NY 170, *supra*), *Dworman v Lee* (83 AD2d 507, affd on opn below 56 NY2d 816) and *Iselin & Co. v Muhlstock, Elowitz & Co.* (52 AD2d 540), held that the complaint failed to state a cause of action and should be dismissed. We disagree. ¶ It is too basic a proposition to require extensive citation that on a motion to dismiss a complaint, made pursuant to CPLR 3211 (subd [a], par 7), for failure to state a cause of action "every fact alleged must be assumed to be true and the complaint liberally construed in plaintiff's favor" (*Barr v Wackman,* 36 NY2d 371, 375). Here, plaintiffs have alleged in paragraph 8 of their complaint that: "8. In performing auditing and accounting services for Majestic Electro, defendants knew of EAB's lending relationship with Majestic Electro, and by reason of direct oral and written communication with EAB, its officers and employees, knew at all relevant times herein that EAB was relying on the services performed by them in reviewing interim and year-end financial statements and in rendering unqualified professional opinions thereon, and in particular in valuing the inventory hypothecated and accounts receivable assigned to EAB as collateral for loans". EAB has further alleged that, among other things, for the period 1979-1982, the inventory of the Majestic Electro group, including its subsidiaries Brite Light Lamps and others, was grossly overstated and that from 1979 to 1982, the defendants failed to value the inventory at the lower of cost or market value or to write off obsolete inventory in valuing the entries for inventory of the Majestic Electro group on the interim financial statements, and thus failed to meet the professional standards of integrity, competence, and due care in performing accounting and auditing services. Moreover, EAB charges that the defendants failed to disclose in the financial statements of Majestic Electro as of December 31, 1981 certain subsequent events that diminished the value of the inventory of Brite Light, another Majestic Electro subsidiary, by approximately one million dollars. Brite Light defaulted on its loan agreement, causing EAB to liquidate the Brite Light inventory which resulted in a recovery of only about 20% of the value of the inventory as represented by Strauhs & Kaye. ¶ These allegations of direct oral and written communications with EAB, its officers and employees by the defendants regarding the inventory and financial condition of Majestic Electro, and its subsidiaries render this a different case from *Ultramares (supra)*. There is no claim here of any duty owing from the defendant to an "indeterminate class of persons who, presently or in the future, might deal with the [debtor/promisee] in reliance on the audit". (*Ultramares Corp. v Touche,* 255 NY 170, 183, *supra*.) Rather, this case more nearly approaches the circumstances presented to the Court of Appeals in *White v Guarente* (43 NY2d 356). There the court denied a CPLR 3211 (subd [a], par 7) motion to dismiss the complaint in an action brought by limited partners of a limited partnership alleging negligence by the accountants in the performance of auditing and tax return services rendered on behalf of the limited partnership. The court found that the services of the accountant "were not extended to a faceless or unresolved class of persons, but rather to a known group possessed of vested rights, marked by a definable limit and made up of certain components". (*White v Guarente,* 43 NY2d 356, 361, *supra*.) The court pointed out in *White* (p 361) that the "accountant * * * was retained to perform an audit and prepare the tax returns of [the limited partnership], and the accountant must have been aware that a limited partner would necessarily rely on and make use of the audit and tax returns of the partnership, or at least constituents of them, in order to properly prepare his or her own tax returns." So too, in the case at bar, assuming the truth of the allegations in the complaint, the defendant, in making the direct oral and

written representations to the plaintiff as to the value of the inventory of Majestic Electro and its subsidiaries, knew that the inventory would be used as the basis upon which loans would be made by the plaintiff to Majestic Electro and that plaintiff would rely on those representations in determining the level of loan to be granted. Indeed, from the allegations of the complaint it seems clear that the defendants knew that plaintiff was Majestic Electro's principal lender and also knew the terms of the lending relationship between the plaintiff and Majestic Electro and its subsidiaries. It appears therefore that the plaintiff was a " 'member of * * * a settled and particularized class among * * * which the [defendant's] report would be circulated for the specific purpose' " of determining the level of loans to be made to Majestic Electro and its subsidiaries. (*Credit Alliance Corp. v Andersen & Co.,* 101 AD2d 231, 235.) In defining the duty imposed under these circumstances, the Court of Appeals has stated in *White* (pp 362-363) that "generally a negligent statement may be the basis for recovery of damages, where there is carelessness in imparting words upon which others were expected to rely and upon which they did act or failed to act to their damage [citations omitted], but such information is not actionable unless expressed directly, with knowledge or notice that it will be acted upon, to one to whom the author is bound by some relation of duty, arising out of contract or otherwise, to act with care if he acts at all". The court went on to point out that this rule was specifically approved in *Ultramares* (*supra,* at p 185). ¶ Accordingly, the complaint should not have been dismissed. Concur — Murphy, P. J., Milonas, Kassal and Alexander, JJ.

Ross, J., concurs in a memorandum as follows: I agree that the complaint should be reinstated. It is undisputed that the defendants' accounting firm directly made representations to plaintiff bank as to the soundness of the inventory and accounts receivable of defendants' client Majestic Electro (Majestic), and, as a result of these representations, plaintiff extended approximately three million dollars in credit to Majestic. In view of the fact that defendants were aware that plaintiff was relying on their audit, the plaintiff was "entitled to a duty of care from defendant[s]" (*Credit Alliance Corp. v Andersen & Co.,* 101 AD2d 231, 235-236). ¶ The public responsibility of accountants has expanded dramatically. While 50 or more years ago accountant's audits were primarily used to inform clients of the financial health of their businesses, today it is assumed, as a matter of course, that accountant's audits will be used and relied upon, not only by clients but also by third parties, such as the investing public and lenders, with whom the accountants have no employment relationship. Recognizing this fundamental change in the role of accountants, a unanimous United States Supreme Court in *United States v Young & Co.* (465 US __, __, 104 S Ct 1495, 1503), ruled that: "By certifying the public reports that collectively depict a corporation's financial status, the independent auditor assumes a *public* responsibility transcending any employment relationship with the client. The independent public accountant performing this special function owes ultimate allegiance to the corporation's creditors and stockholders, as well as to [the] investing public. This 'public watchdog' functions demands that the accountant maintain total independence from the client at all times and requires complete fidelity to the public trust." (Material in italics in text, material in brackets added.)