■ WESTPAC BANKING CORPORATION, Appellant, v VINCENT J. DESCHAMPS et al., Defendants, and SEIDMAN & SEIDMAN, Respondent. — Order, Supreme Court, New York County (Arthur Blyn, J.), entered on or about June 22, 1984, unanimously

reversed, on the law, to the extent appealed from, and said fourth cause of action reinstated. Appellant shall recover of respondent $75 costs and disbursements of this appeal. The order of this court entered on March 5, 1985, and the memoranda filed therewith (109 AD2d 609), are recalled and vacated. Kupferman, J. P., concurs in a memorandum with which Sullivan, J., concurs, and Sandler and Kassal, JJ., concur, each in a separate memorandum, all as follows:

Kupferman, J. P. (concurring). The Turnkey defendants were engaged in the business of purchasing word-processing and related equipment and services in a lease-back arrangement to third parties for use in their businesses. The arrangement gave certain tax benefits to the third party.

The Turnkey defendants commenced discussions for an underwriting commitment for the purpose of a public offering. However, before the underwriter would give a commitment, it stipulated that independent public accountants be retained. The defendant-respondent accounting firm was chosen, and it examined the Turnkey defendants' financial statements. The Turnkey defendants negotiated with the plaintiff-appellant for a loan to finance their operations pending a public offering of their stock, which arrangement is commonly known as a bridge loan. The original underwriter withdrew but a new underwriter gave a commitment, and the plaintiff-appellant loaned a substantial amount of money. Several months later, the accounting firm notified the Turnkey defendants that its report on the financial statements could no longer be relied upon and, shortly thereafter, the Turnkey parent company made an assignment for the benefit of creditors and ceased doing business.

The plaintiff's claim against the accountants is on the basis that they had a duty to potential bridge lenders to use due professional care and skill and that they failed to do so.

The applicable law in this department is set forth in *Credit Alliance Corp. v Andersen & Co.* (101 AD2d 231). The only issue is the current state of law regarding privity. It seems clear that the possible class for bridge loans is reasonably definable and that the plaintiff has set forth a cause of action with respect thereof.

Sandler, J. (concurring). I am unable to discern a meaningful legal distinction between this case and *Credit Alliance Corp. v Andersen & Co.* (101 AD2d 231), presently on appeal to the Court of Appeals. Accordingly, I join the court in reversing Special Term's order dismissing the fourth cause of action.

Except for the recent *Credit Alliance* decision, I would have thought that the issue here presented continued to be governed

by the rule set forth in *Ultramares Corp. v Touche* (255 NY 170), the clear language of which would have required dismissal of the cause of action. It is true that in *White v Guarente* (43 NY2d 356, 362), the Court of Appeals suggested some relaxation in the application of the *Ultramares* rule on behalf of " 'members of a limited class whose reliance on the financial statements is specifically forseen' ".

The facts in *White v Guarente (supra)*, in the light of which this observation must be considered, are so different from the situation here presented as to make it doubtful that the Court of Appeals contemplated so significant a departure from the *Ultramares* principle. (*Cf. European Am. Bank & Trust Co. v Strauhs & Kaye,* 102 AD2d 776.) Notwithstanding these observations, I agree that the competing values underlying the issue presented in *Credit Alliance (supra)* and in this case make the resolution of the issue a close one which justifies fresh consideration in the light of contemporary commercial realities.

Kassal, J. (concurring). Under the circumstances of this case, I find that the fourth cause of action does state a cognizable claim for relief as against the accountants (*see, Credit Alliance Corp. v Andersen & Co.,* 101 AD2d 231; *European Am. Bank & Trust Co. v Strauhs & Kaye,* 102 AD2d 776).

The fourth cause of action of the complaint alleges that the public accountants, defendant Seidman & Seidman, knew, when they prepared and issued their financial report, that the defendant Turnkey would seek a loan from a bank, relying upon such statements as certified by their accountants. On this basis, the accountants, in performing the audit and rendering a report based thereon, had a duty to exercise due care which extended to potential lenders. These allegations sufficiently set forth a cause of action.