**Jill S. KAMEN, Plaintiff–Appellant,**

**v.**

**KEMPER FINANCIAL SERVICES, INC., and Cash Equivalent Fund, Defendants–Appellees.**

No. 89–2967.

United States Court of Appeals, Seventh Circuit.

Submitted July 3, 1991.

Decided Aug. 7, 1991.

Richard M. Meyer, Milberg, Weiss, Bershad, Specthrie & Lerach, New York City, Joel Sprayregen, Clifford E. Yuknis, Shefsky & Froelich, Chicago, Ill., for plaintiff-appellant.

Joan M. Hall, Joel T. Pelz, Ellen R. Kordik, Jenner & Block, Martin M. Ruken, Arthur J. McGivern, Charles F. Custer, Stuart D. Kenney, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., Gwenda M. Burkhardt, Deerfield, Ill., for defendants-appellees.

Before CUMMINGS, EASTERBROOK and RIPPLE, Circuit Judges.

EASTERBROOK, Circuit Judge.

The Supreme Court remanded this case with instructions to decide whether, under federal law reflecting the law of Maryland, Kamen has established adequate reason for not making a demand on the directors of the Cash Equivalent Fund. — U.S. ——, 111 S.Ct. 1711, 1722–23 & n. 10, 114 L.Ed.2d 152 (1991). Kamen's request that we allow the district court to resolve that question in the first instance is inconsistent with both the Supreme Court's instructions and her argument to the Supreme Court that we erred in declining to apply Maryland law. (We had declined, 908 F.2d 1338, 1342 (1990), because Kamen did not raise any question of Maryland law in the district court, or in this court until her reply brief—the very circumstance that Kamen now asserts makes a remand appropri-

ate.) Moreover, the question is one of law, and little would be served by increasing the number of layers in this case, which has aged considerably without drawing close to trial.

Kamen maintains that the Fund violated her rights under federal law by circulating a proxy statement containing a misleading comparison between the investment fees charged to the Fund and the fees charged to other members of Kemper's group of funds. Rule 23.1 requires the plaintiff in a derivative suit to allege "with particularity ... the reasons for the plaintiff's ... not making the effort" to demand action from the directors. Kamen's complaint, as amended after the close of discovery, alleges six reasons for failure to make demand:

1. The seven independent directors on the ten-person board received "aggregate remuneration of approximately $300,000 a year" for their role as directors of the Cash Equivalent Fund and other members of the Kemper Group.
2. The directors voted to circulate the proxy statement containing the statement to which Kamen objects.
3. A demand would have been tantamount to a request that the directors sue themselves.
4. The directors were "under the control" of Kemper.
5. The Fund sought to dismiss her complaint on substantive as well as procedural grounds.
6. Federal "policy" established by the Investment Company Act of 1940 augurs against demand.

We dismiss reason six immediately in light of the Supreme Court's holding that no federal rule prevents the application of Maryland law. 111 S.Ct. at 1722. What remains for decision is whether Maryland treats any of the other five reasons as enough to allow derivative litigation without a demand on directors.

■ Like most states, Maryland both requires demand as a norm and excuses demand when the request would be futile. *Waller v. Waller*, 187 Md. 185, 191–92, 49 A.2d 449, 453 (1946); *Eisler v. Eastern*

*States Corp.*, 182 Md. 329, 333, 35 A.2d 118, 119–20 (1943). Maryland has done little to develop the scope of its futility exception. Only one case in the state's history discusses that doctrine. *Parish v. Maryland & Virginia Milk Producers Association*, 250 Md. 24, 81–84, 242 A.2d 512, 544–45 (1968).

The plaintiff in *Parish* contended that a majority of the association's board had defrauded it. The suit named as defendants both the association and the members of its board. The court thought that it would be futile to ask the members of the board to sue themselves for wrongdoing and held that demand is excused when the alleged wrongdoers both are defendants and constitute a majority of the board. The Fund contends that *Parish* requires judgment in its favor because Kamen does not allege that the directors engaged in fraud and has not sued any of them; Kamen submits that *Parish* requires a decision in her favor because all of the members of the Fund's board approved the proxy statement and thus took part in what she characterizes as wrongdoing.

■ *Parish* does not dispose of these arguments one way or another. It is a single point, and you can draw a line any which way through one point on a plane. *Parish* does, however, enable us to resolve several of Kamen's arguments. By reiterating that demand is the norm in Maryland, *Parish* shows that Kamen's first and fourth allegations are insufficient. Kamen observes that the directors receive fees for their services and alleges generally that the directors are under Kemper's thumb. If allegations of this kind sufficed, the demand rule would be negated—for almost all directors receive fees, and independent directors come to a board after being slated by corporate insiders. There would have been no need in *Parish* to inquire into the directors' personal culpability if their status as directors (together with payment for their time) were enough to dispense with demand. The "control" allegation also flunks the "particularity" requirement of Rule 23.1, which governs how the plaintiff must allege matters substantively material

under state law. The complaint alleges no facts pertinent to control and so does not satisfy the "particularity" requirement even if "control" could be a sufficient excuse under Maryland law.

■ *Parish* is inconsistent with Kamen's third allegation too: that demand would be equivalent to a request that the directors sue themselves. Kamen wants relief against Kemper, which collected the allegedly excessive fees, not against the directors personally. As Kamen does not believe that the facts justify action against the directors individually, demand would not have implied that the directors should go sue themselves. Maryland does not think it sufficient that something bad happened on a director's watch; it requires proof of wrongdoing. E.g., *Waller*, 187 Md. at 190–91, 49 A.2d at 452–53; *Booth v. Robinson*, 55 Md. 419 (1880). The business judgment rule protects the directors against personal liability for ordinary errors. So Kamen's reasons come down to two: that the directors approved the proxy statement, and that the directors have opposed her suit on the merits.

■ Whether the directors' involvement in the transaction complained of excuses demand depends on the function of the demand rule. If demand serves only to alert the directors to a grievance, then their involvement excuses demand because they already know what they have done. If however demand either recognizes the allocation of powers within the corporation (apportioning the initial decision to those the investors have handed the reins) or serves a screening role (a form of alternative dispute resolution helping to weed out weak cases), then the fact that the directors participated in the transaction is not enough. Maryland has not spoken clearly to the function demand serves; still, *Waller* treats demand as a useful screen for the courts, and *Parish* says that application must be made unless the directors are "wrongdoers". Participants who are not "wrongdoers" may evaluate their acts and change their minds.

Decisions in several states support Kamen's argument that the directors' partic-

ipation in the questioned acts excuses demand. E.g., *Barr v. Wackman*, 36 N.Y.2d 371, 368 N.Y.S.2d 497, 329 N.E.2d 180 (1975); *Valiquet v. First Federal Savings & Loan Association*, 87 Ill.App.3d 195, 42 Ill.Dec. 212, 217, 408 N.E.2d 921, 926 (1st Dist.1979). The tide is running against this approach, however. See ALI, *Principles of Corporate Governance: Analysis and Recommendations* 76–81 (T.D. No. 8, 1988) (Reporter's note analyzing state cases). Delaware, today's dominant corporate jurisdiction, has emphatically rejected the proposition that an investor may forego demand whenever the directors participated in the transaction they challenge. E.g., *Grobow v. Perot*, 539 A.2d 180 (Del. 1988); *Aronson v. Lewis*, 473 A.2d 805 (Del.1984). See also, e.g., *Starrels v. First National Bank of Chicago*, 870 F.2d 1168, 1170–71 (7th Cir.1989); *Lewis v. Graves*, 701 F.2d 245, 248–49 (2d Cir.1983), collecting authority to the same effect. The prevailing contemporary view is that demand is necessary if the directors are disinterested—and because of the business judgment rule directors may be financially disinterested even if they took part in the acts of which the plaintiff complains. Careless acts by directors are regrettable but not a source of personal liability. So a plaintiff who believes that the directors violated their duty of care may ask them to take remedial action without putting their fortunes at risk.

*Aronson* and comparable cases conclude that unless there is good reason to doubt that the directors' acts are protected by the business judgment rule, a disgruntled investor must ask the directors to act. Maryland has never addressed this issue. In resolving doubt about the scope of its demand requirement, Maryland could well be influenced by the recommendations of the American Law Institute and the American Bar Association, both of which believe that the futility exception to the demand requirement should be eliminated rather than expanded. ALI, *Principles of Corporate Governance: Analysis and Recommendations* § 7.03 (T.D. No. 11, 1991); ABA, *Model Business Corporation Act* § 7.42(1)

(1990 revision). So, too, Maryland might be influenced by the burgeoning research casting doubt on the value of derivative litigation for investors. E.g., Roberta Romano, *The Shareholder Suit: Litigation Without Foundation?*, 7 J.L.Econ. & Org. 55 (1991); Janet Cooper Alexander, *Do the Merits Matter? A Study of Settlements in Securities Class Actions*, 43 Stan.L. Rev. 497 (1991); Mark L. Cross, Wallace N. Davidson & John H. Thornton, *The Impact of Directors' and Officers' Liability Suits on Firm Value*, 56 J. Risk & Insurance 128 (1989); Daniel R. Fischel & Michael Bradley, *The Role of Liability Rules and the Derivative Suit in Corporate Law: A Theoretical and Empirical Analysis*, 71 Cornell L.Rev. 261 (1986). State legislatures have begun to adopt universal-demand requirements. 111 S.Ct. at 1719 n. 7 (collecting statutes). There is no counter movement toward enlarging the futility exception. We think it likely, then, that if Maryland does not abolish the futility exception it will cast its lot with the states that require demand on directors who face no substantial risk of personal liability. As Kamen has never argued that the Fund's seven independent directors could be personally liable—indeed, Kamen has never argued that they even noticed the single sentence of which she complains—it follows that the directors' approval of the proxy statement does not make demand futile.

Yet we know, Kamen responds, that these directors were *not* willing to put things to rights. After she filed this suit, the directors moved to dismiss her claims on the merits. During depositions, several directors took a dim view of Kamen's substantive allegations. These objections demonstrate, she maintains, that demand was futile. This argument confuses futility with failure. A demand is "futile" only if the directors' minds are closed to argument. That the directors disagreed with an argument could show their unwillingness to listen, but also could show that the argument was feeble. See *Pogostin v. Rice*, 480 A.2d 619, 627 (Del.1984). Demand enables the directors to take the leading role in managing the corporation. Conscientious managers may conclude that legal action is unjustified because not meritorious, or because it would subject the firm to injury. This is why courts assess futility *ex ante* rather than *ex post*. See Deborah A. DeMott, *Shareholder Derivative Actions: Law and Practice* § 5.03 at 31 (1987). To say that a demand would have been futile because directors proved unsympathetic to the lawsuit is like saying that sending Mickey Mantle to the plate with the bases loaded was futile because he struck out.

Kamen insists that *Parish* equates opposition with futility, but we do not read the case so. The passage Kamen cites, 242 A.2d at 546–47, deals with demand on investors (the members of the agricultural cooperative) rather than demand on directors. Demand on investors is rarely necessary, in part because investors lack the information available to the managers and are prone to approve the managers' acts reflexively, as they did in *Parish*. Inability of scattered investors to assess managerial acts astutely is why only *unanimous* action can ratify waste, and why courts almost never require a demand on investors. Maryland's holding that the members' nonunanimous ratification of the directors' acts does not block the derivative suit puts that state in line with the dominant view. It does not imply that Maryland would blaze a lonely path and treat directors' substantive opposition to the derivative suit as retroactively excusing demand. So far as we know, no state treats the directors' failure to capitulate in the lawsuit as forfeiting the firm's entitlement to demand before the suit commences. Directors will (and should) oppose weak claims. If that opposition eliminated the need for demand, we would reach the curious pass that claims so weak that they should not be pursued at all could go straight to court, while claims strong enough to litigate about should be presented to the directors. Kamen does not tell us why Maryland would adopt such a topsy-turvy rule after saying in *Waller* that demand is a valuable screen against weak claims: "[I]f the courts would open their

doors to all complaining stockholders without requiring them to show that it was impossible to obtain redress through regular corporate action, litigation of this kind would be endless." 187 Md. at 192, 49 A.2d at 453. If substantive opposition retroactively excuses demand, why would any investor demand action? If the firm opposed the suit, then the opposition would show the futility of demand; if however the firm embraced and prosecuted the plaintiff's claim, then the plaintiff would receive all the relief the court could have awarded. Demand would be defunct. Yet Maryland says that demand is the norm. It must follow that the directors' substantive opposition does not obviate demand.

For the reasons given in our initial opinion, 908 F.2d at 1347–50, the district court's judgment is reversed to the extent it held that Kamen is not entitled to pursue a direct action under § 36(b) of the Investment Company Act. The Supreme Court denied the Fund's petition for certiorari to review that aspect of our decision, —— U.S. ——, 111 S.Ct. 558, 112 L.Ed.2d 565 (1990), as it denied Kamen's petition to the extent it sought review of our holding, 908 F.2d at 1350–51, that she is not entitled to a jury trial of her claim under § 36(b), —— U.S. ——, 111 S.Ct. 554, 112 L.Ed.2d 561 (1990). The case is remanded for further proceedings under § 36(b). The judgment is affirmed to the extent it holds that Kamen's failure to make a demand on the Fund's directors blocks a derivative action under § 20(a).