OPINION OF THE COURT
David Goldstein, J.
This is a shareholders’ derivative action, commenced by *780 plaintiffs Bouhayer and Alissandratos, who own two thirds of the outstanding stock and are, respectively, president and vice-president of the corporate defendant, Gregouar Food Specialties, Inc. Defendant Georgalis owns one third of the stock and was the general manager of Gregouar Food, which operated a delicatessen at 46 West 56th Street, New York, New York. As manager, Georgalis was charged with the responsibility for hiring employees, collecting receipts, keeping the payroll and other financial records, and overseeing and managing the operation of the delicatessen. The complaint seeks to have Georgalis account for monies and property allegedly converted by him, a money judgment for sums and property appropriated or wasted and punitive damages. The action is brought as a derivative action, for and on behalf of the corporation. Gregouar Food was dissolved in August 1991, as a result of these and other problems.[1]
Defendants Bernstein, Casco Food Distributors and Disco Wholesale Meats allegedly participated in the scheme to divert funds from Gregouar Food, but are not parties to or the subject of the instant motion.
Georgalis moves to dismiss the complaint, pursuant to CPLR 3211, contending that plaintiffs have failed to strictly comply with the pleading prerequisites of a shareholders’ derivative action, namely, the requirement that the complaint set forth "with particularity” plaintiffs’ efforts to secure that such action be initiated by the board, or the reasons for not making such effort (Business Corporation Law § 626 [c]). The statute directs that a demand be made upon the corporation before instituting suit on the corporation’s behalf, unless such demand would be futile (see, Barr v Wackman, 36 NY2d 371, 377). Paragraph 20 of the complaint here alleges that no demand was made upon either Georgalis or Gregouar Food since it would have been futile to demand that Georgalis maintain an action against himself, nor would it be possible to demand that Gregouar Food commence an action either against itself or Georgalis, since the corporation does not have the necessary financial resources. In opposition to the motion, plaintiffs argue *781 that a demand would have been futile here and, in any event, they constitute a majority of the shareholders and directors of the corporation, which makes it unnecessary for them to demand that the corporation initiate such an action.
Georgalis argues that compliance with Business Corporation Law § 626 (c) is mandatory and that a demand should have been made upon the board of directors to commence an action on behalf of the corporation, relying in part upon the recent Court of Appeals decision in Marx v Akers (88 NY2d 189), wherein the Court limited those occasions when a demand could be excused as futile.
As noted, Business Corporation Law § 626 (c) directs that, in a shareholders’ derivative action, "the complaint shall set forth with particularity the efforts of the plaintiff to secure the initiation of such action by the board or the reasons for not making such effort.” The underlying purpose of the demand procedure, it has been observed, is "to weed out unnecessary or illegitimate shareholder derivative suits” (Barr v Wackman, supra, at 378).
Plainly, the purpose of a shareholders’ derivative action is to remedy a wrong done to the corporation and to recover in the right of and for the benefit of the corporation. A derivative claim against the directors of a corporation is one which belongs to the corporation itself since "the decision whether and to what extent to explore and prosecute such claims lies within the judgment and control of the corporation’s board of directors.” (Auerbach v Bennett, 47 NY2d 619, 631.)
It has been recognized that shareholder derivative actions, by their nature, infringe upon the management of the corporation by the board. As a result, the demand procedure evolved with certain purposes, namely, to (1) relieve the courts from passing upon internal corporate matters, (2) provide reasonable protection from harassment by litigation on matters plainly within the discretion of the directors, and (3) discourage "strike suits” brought by shareholders out for personal gain, rather than for corporate benefit (see, Barr v Wackman, supra, at 378).
The demand procedure protects the integrity and independence of the directors, whose prime responsibility it is to manage the corporation. To accommodate those situations where directors are actuated by fraud or bad faith, and not the best interests of the corporation, demand may be excused where it is clear that the directors will wrongfully refuse to bring a claim (Barr v Wackman, supra, at 378-379; Gordon v Elliman, 306 NY 456, 462).
*782 In Marx v Akers (supra), after reviewing Delaware’s two-prong demand requirement to determine the futility of a demand and the universal demand procedure, which had been proposed by the American Bar Association in its Model Business Corporation Act, the American Law Institute, and was adopted in at least 11 States, the Court of Appeals discussed the New York demand/futility requirement. In doing so, the Court noted that the rule set forth in Barr v Wackman (supra), in terms of excusing demand, had been misinterpreted by the lower courts to excuse demand whenever a majority of the assenting board members were named as defendants. This, it was observed, afforded plaintiffs an available means to frame their complaint so as to excuse demand in virtually every case and, in turn, permitted the exception to swallow the rule. As a result, the Court of Appeals limited the Barr demand/futility standard[2] to excuse demand only when the complaint alleges, with particularity, that (1) a majority of the board of directors is interested in the challenged transaction, (2) the board members did not fully inform themselves about the challenged transaction to a reasonably appropriate extent, and (3) the challenged transaction was so facially egregious that it could not have been the product of sound business judgment of the board.
In Marx (supra), the complaint alleged that, during a period of declining profitability, IBM’s director defendants had awarded excessive compensation to outside directors on the board and had voted for unreasonably high compensation for IBM executives, which violated their fiduciary duty to the company. The Court of Appeals affirmed the dismissal of the complaint, holding that there were no factually based allegations of wrongdoing or waste sufficient to state a cause of action for corporate waste. As to the executive compensation claim, the Court held that plaintiff was not excused from making a demand since only three directors allegedly received the benefit of the executive compensation scheme, less than the required majority to render a demand futile.
To the extent the present action was properly commenced as a derivative suit, there is a novel issue presented by the procedural course chartered by these parties, namely, whether *783 the facts here warrant an expansion of the Marx rationale to excuse a demand "in a case where the action is brought by the majority against the minority, the latter having managed the business, to recover for corporate waste, fraud, conversion and diversion and appropriation of corporate opportunity.
In delineating those instances where, a demand would be excused, the Court of Appeals in Marx (supra) did not consider or address the type of situation here, namely, an action by the majority shareholders, derivatively, on behalf of the corporation, for fraud, conversion and waste of corporate assets by the minority. In this lies the unique nature of the issue raised on this motion, especially bearing in mind that the Court of Appeals decided Marx only two months ago.
Plainly, none of the general purposes which underlie the demand procedure would be served by requiring a demand in this case. This is not a case where one would be apt to correct an abuse prior to court intervention. Nor does the issue here involve application of the business judgment rule. Moreover, this case poses no issue of discouraging shareholder suits for personal gain, diverting such from the corporation. Rather, as noted, this is. an action to recover for fraud, conversion and corporate waste.
While one would doubt that the omission of this type of situation in the discussion in Marx (supra) was a mere oversight, no useful purpose would be served by requiring a demand in this case. To impose such a requirement here would exalt form over substance. After all, this action is brought by the majority of the directors and shareholders and it is highly unlikely that it could have or would have been instituted by the defendant against himself. Not without significance is that defendant took no action for more than three years, moving to dismiss as a result of the absence of a demand only after all disclosure had been completed and the case was ready for trial, having been placed upon the calendar.
Under the circumstances, dismissal would be highly prejudicial to the interests of the corporation and would serve no useful purpose, since all that the plaintiffs need do is meet, vote and recommence the action. In the final analysis, there would be two or three additional years of delay to effect a resolution of the serious charges raised in this case. The very same result could be accomplished if the plaintiffs, a majority of the shareholders and directors, met in the corner, or even over coffee and, nunc pro tunc, reached the same dispositive determination which they have already made by the commencement of this action.
*784 In my view, had the Court of Appeals considered the type of situation presented in this case, i.e., a suit by the majority against the minority, involving a close corporation, our highest Court would have considered the factual situation here as an additional exception to or "elaboration” of the Barr demand/ futility standard. Where such an action is brought by a majority of the shareholders or directors, derivatively, on behalf of the corporation, to recover against the minority for fraud, conversion or corporate waste, formal demand should be presumed or excused as unnecessary. To hold otherwise would defeat or impair the interests of the very party whose rights are to be protected by a derivative action.
While the foregoing is dispositive of the motion in terms of the necessity of a demand, in my view, on this record, it was unnecessary here to institute the suit as a shareholders’ action, derivatively, on behalf of the corporation. The very same relief could have been obtained by an action brought pursuant to Business Corporation Law § 720 (a), commenced against defendant Georgalis, in his individual capacity, as a former director and/or officer of the corporation, to compel him to account for his official conduct. Business Corporation Law § 720 (a) (1) provides in part for the commencement of an action against one or more officers or directors of a corporation, to compel an accounting for the following:
"(A) The neglect of, or failure to perform, or other violation of his duties in the management and disposition of corporate assets committed to his charge.
"(B) The acquisition by himself, transfer to others, loss or waste of corporate assets due to any neglect of, or failure to perform, or other violation of his duties.”
Under the statute, an officer or director may bring an action, individually, on behalf of the corporation, against a director or officer for corporate waste or other misconduct, within the scope of the statutory provision (Business Corporation Law § 720 [a] [1] [A], [B]; see, Siegel v Protiva, 130 AD2d 569; Di Dominici v Parmet, 118 AD2d 618, lv denied 68 NY2d 601; Conant v Schnall, 33 AD2d 326, 328). In such an action, remedial relief is sought on behalf of the corporation, for the defendant’s breach of his fiduciary duty. However, where the wrong is committed solely against the corporation, an individual shareholder has no right to bring an action in his own name and on his own behalf (see, Abrams v Donati, 108 AD2d 704, 705, affd 66 NY2d 951; General Motors Acceptance Corp. v Kalkstein, 101 AD2d 102, 106, appeal dismissed 63 NY2d 676). Plainly, it is *785 the former situation which is involved in this action, which seeks an accounting and related relief as to defendant’s conversion, fraud, misappropriation of corporate funds and breach of fiduciary duty.
It has been held that, where an officer of a corporation is found to have diverted corporate assets and opportunities, he may be held accountable (Wolff v Wolff, 67 NY2d 638, 641, rearg denied 67 NY2d 918, mot to amend remittitur denied 68 NY2d 754). This is especially so in a close corporation, where the relationship between shareholders, officers and directors, vis-á-vis each other, is akin to that between partners and imposes a high degree of fidelity and good faith (Fender v Prescott, 101 AD2d 418, 422-423, affd 64 NY2d 1077 and 1079; Matter of Ronan Paint Corp. [Doran], 98 AD2d 413, 421; Matter of Gordon & Weiss, 32 AD2d 279, 281; Matter of Pivot Punch & Die Corp., 15 Misc 2d 713, 716, mod on other grounds 9 AD2d 861). As was observed by Chief Judge Cardozo in another context in Meinhard v Salmon (249 NY 458, 464), "A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior.”
Accordingly, upon the foregoing, defendant’s motion to dismiss the complaint or for summary judgment is denied in all respects. In terms of summary judgment relief, Georgalis has failed to tender sufficient evidence to eliminate the existence of any material issues of fact (see, Winegrad v New York Univ. Med. Ctr., 64 NY2d 851). In support of his motion, Georgalis places principal reliance upon his affidavit, which, in essence, operates as a general denial of the allegations in the complaint and is factually inadequate for summary judgment relief.
As has been frequently observed, the function of the court upon a motion for summary judgment is issue finding, not issue determination (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395, 404; Esteve v Abad, 271 App Div 725, 727). In order to grant summary judgment, it must clearly appear that there are no genuine triable issues of fact. The drastic relief of summary disposition should not be granted where there is any doubt as to the existence of such an issue (Braun v Carey, 280 App Div 1019), or where the issue is "arguable” (Barrett v Jacobs, 255 NY 520, 522).
Moreover, the proof offered in opposition to the motion presents clear factual issues which must await the trier of the facts. It has been held that a party in opposition to such a mo-
*786 tion must adduce evidentiary proof in admissible form to demonstrate the existence of genuine triable issues of fact (see, Zuckerman v City of New York, 49 NY2d 557; Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065). Here, Bouhayer’s affidavit raises factual issues as to Georgalis’ alleged conversion of monies and property and waste of corporate assets. It is claimed that an audit disclosed a discrepancy of between $50,000 and $92,000 as a result of a "skimming” from gross receipts, theft of merchandise for resale to competitors and mismanagement, reflecting a large-scale misappropriation of funds. The record is replete with such factual issues, including alleged excessive expenses incurred by Georgalis, supported in part by an accountant’s report and analysis. In my view, this is sufficient to preclude summary judgment relief on this record. These and other factual issues must await the trial.
Accordingly, upon the foregoing, the motion to dismiss the complaint pursuant to CPLR 3211 or, in the alternative, for summary judgment pursuant to CPLR 3212, is denied in all respects.

. The fact that the corporation was dissolved some two years prior to the commencement of the derivative action does not operate as a bar to this action (see, Independent Investor v Time, 50 NY2d 259, 264, rearg denied 50 NY2d 1059 [wherein the Court recognized that "when the corporation has dissolved, the shareholder’s interest does not abruptly end * * * the shareholder’s stake in any cause of action existing in favor of the corporation remains quite real”]).

. The Court had held in Barr v Wackman (supra) that demand would be futile if the complaint alleged that (1) a majority of the directors were interested in the transaction, (2) the directors failed to inform themselves about the transaction to a degree reasonably necessary, or (3) the directors failed to exercise business judgment in approving the transaction.