HELEN VALIQUET, Plaintiff-Appellant, *v.* FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF CHICAGO *et al.*, Defendants-Appellees.

First District (5th Division)    No. 78-1270

Opinion filed September 28, 1979.—Supplemental opinion filed on rehearing July 25, 1980.

Gary L. Specks, of Specks & Goldberg, Ltd., Philip H. Corboy, of Philip H. Corboy & Associates, and Jerome S. Wald, of Wald & Wald, all of Chicago, for appellant.

Lord, Bissell & Brook, Arnstein, Gluck, Weitzenfeld & Minow, and McDermott, Will & Emery, all of Chicago (Richard K. Decker, Joseph E. Coughlin, Edward F. Fitzpatrick, Burton Y. Weitzenfeld, John L. Ropiequet, James W. Ashley, Frank M. Covey, Jr., and Robert J. Lepri, of counsel), for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

Plaintiff appeals the dismissal of her shareholder derivative complaint which alleged that a Federal savings and loan association's directors and officers usurped the association's corporate opportunity to operate an insurance agency. She contends that the trial court erred when it dismissed her complaint on grounds that (1) a Federal agency had primary jurisdiction; and (2) she failed to allege facts sufficient to excuse a demand on directors of the association. We reverse and remand.

Plaintiff, a savings account depositor and voting member of First Federal Savings & Loan Association (Association), brought a shareholder's derivative suit against, among others, defendants Association,

various present and former directors and/or officers of the Association, First Federal Agency, Incorporated (Insurance Agency), First Federal Employees' Retirement and Savings Fund (Retirement Fund), unknown trustees of the Retirement Fund, and Gus Larson, the treasurer and a known trustee of the Retirement Fund. Plaintiff's complaint alleged that the named directors and officers of the Association, a Federal savings and loan association chartered by the Federal Home Loan Bank Board, breached their fiduciary duty to the Association and its account holders by illegally and fraudulently diverting and usurping the Association's opportunity to operate an insurance agency. As early as 1968, the Association had the legal authority to become licensed as an insurance agent, either through a service corporation or through a wholly owned subsidiary of a service corporation, and to place member insurance business generated by or through the Association. The usurpation and diversion allegedly occurred from 1968 to the time of the filing of this complaint when, despite this legal authority, the directors and officers systematically directed that the insurance business of the Association's members be given to Insurance Agency, a corporation which was owned and operated by Retirement Fund and which had all of the Association's 14 active directors on its own board of directors. All income generated from this insurance business went into the general assets of the Retirement Fund, which ultimately benefited the officers and employees of the Association; Association members derived no benefit from these funds. Plaintiff's prayer for relief requested, among other things, that defendants account for damages resulting to the Association from the illegal and fraudulent acts and violations of fiduciary duties by the directors and officers and that they return any profits, gains, benefits, earnings and commissions which accrued to them by virtue of those acts and violations.

Defendants filed a motion to dismiss plaintiff's complaint, claiming that (1) the Federal Home Loan Bank Board had primary jurisdiction; (2) plaintiff failed to make a demand on the Association's directors and did not offer sufficient facts to excuse the making of such a demand; (3) plaintiff failed to make a demand on members of the Association; and (4) plaintiff failed to allege sufficient facts to support the allegations of fraud. The trial court granted defendants' motion on grounds that the Federal Home Loan Bank Board had primary jurisdiction and that a demand had not been made on the directors and sufficient grounds to excuse such a demand had not been alleged.

OPINION

I

Plaintiff initially contends that the trial court erred when it dismissed

her complaint on grounds that the Federal Home Loan Bank Board (Board) had primary jurisdiction.

◼◼ ◼ The primary jurisdiction doctrine guides a court in deciding whether it should refrain from exercising its jurisdiction over a lawsuit until after an administrative agency has considered a question which has arisen in the suit. (3 Davis, Administrative Law §19.01, at 3 (1958).) Under this doctrine, initial resort is made to an agency when the question involves matters within the agency's expert and specialized knowledge and when its determination is necessary so that parties who are subject to its continuous regulations are not victims of uncoordinated and conflicting requirements. (*Nader v. Allegheny Airlines, Inc.* (1976), 426 U.S. 290, 48 L. Ed. 2d 643, 96 S. Ct. 1978.) The principal reason behind this doctrine is the need for an orderly and sensible coordination of the work of agencies and courts. 3 Davis, Administrative Law §19.01, at 5 (1958).

Initial resort to the Board was unnecessary here because there are no statutory or administrative procedures by which plaintiff might secure a hearing on her complaint and because the question of usurpation of corporate opportunity does not involve matters peculiarly within the Board's expert and specialized knowledge and a court's determination of the matter will not result in uncoordinated and conflicting requirements. Board regulations existent at the time of the alleged usurpation did not include any procedures by which plaintiff could trigger, obtain, or participate in an adjudication of her complaint.[1] (12 C.F.R. §500 *et seq.* (1979).) Absent such procedures, the doctrine of primary jurisdiction does not apply. *Rosado v. Wyman* (1970), 397 U.S. 397, 25 L. Ed. 2d 442, 90 S. Ct. 1207. *Cf. Nader v. Allegheny Airlines, Inc.* (1976), 426 U.S. 290, 48 L. Ed. 2d 643, 96 S. Ct. 1978 (where the fact that Congress did not authorize *individual* consumers to initiate proceedings before Civil Aeronautics Board (CAB) indicated that Congress did not intend that consumers obtain a CAB ruling before proceeding with common law remedies).

Defendants argue that even though no formal procedures exist, there is nothing in the regulations which deprive plaintiff of access to the Board. They suggest plaintiff should have sent a letter to the Board concerning her complaint and that her failure to do so leaves her "without an equitable position before this court." We disagree. Although plaintiff could have sent a letter to the Board, there are no regulations requiring such an act and there is no guarantee that the Board would have acted on her complaint. Furthermore, even if we were to assume that plaintiff initially should have sent a letter of complaint to the Board, the Board lacks the remedial and jurisdictional powers necessary to grant all of the

---

[1] An earlier regulation did contain a procedure whereby an interested person could file a petition and request a hearing before the Board. (24 C.F.R. §142.2 (1949).) However, this regulation was eliminated prior to the relevant time for this lawsuit.

relief sought by plaintiff. Plaintiff's complaint seeks an accounting for damages and a return of profits, gains, benefits, earnings and commissions from defendants, including Insurance Agency and Retirement Fund. The Board lacks the statutory power to award damages (12 U.S.C. §1464(d) (1976)) and has no jurisdictional power over either Insurance Agency or Retirement Fund. Under these circumstances, initial resort to the agency would be unproductive.

Defendants argue that the Board does have the power to grant all of plaintiff's requested relief since it has the power to appoint conservators and receivers. (12 U.S.C. §1464(d)(1) (1976).) Yet, even with this power of appointment, the Board cannot grant the requested relief, but rather the conservator or receiver must petition a court for such relief.

Another reason for the inapplicability of the primary jurisdiction doctrine is that the question of usurpation of corporate opportunity does not involve matters peculiarly within the Board's expert and specialized knowledge. Board regulations make it clear that a Federal savings and loan association may engage in the insurance business (12 C.F.R. §545.9—1 (1979)) and that a usurpation of such an opportunity violates Federal regulations and constitutes a breach of a fiduciary relationship. (12 C.F.R. §571.9 (1979).) The only remaining question is whether a usurpation occurred under the circumstances of the present case. The standards to be applied in answering this question are traditional corporate laws and are thus "within the conventional competence of the courts, and the judgment of a technically expert body is not likely to be helpful in the application of these standards to the facts of this case." *Nader v. Allegheny Airlines, Inc.* (1976), 426 U.S. 290, 305-06, 48 L. Ed. 2d 643, 656, 96 S. Ct. 1978, 1987-88.

Defendants argue that the regulation on the conducting of an insurance agency by Federal savings and loan associations (12 C.F.R. §555.17 (1979)) and a series of exceptions within that regulation do in fact involve extremely complex questions necessitating preliminary resort to the Board. We disagree. Upon careful review of the regulation, we find no complexity beyond the conventional competence of a trial court.

Lastly, we find that the primary jurisdiction doctrine is inapplicable because there is no danger that parties subject to the Board's regulations will be victims of uncoordinated and conflicting requirements. Since the trial court will apply established corporation law, there is no danger that a fluctuating standard will be used in each case.

Plaintiff also contends that the trial court erred in dismissing her complaint on grounds that she failed to allege facts sufficient to excuse making a demand on the Association's directors to bring suit.

■■ ■ Generally, before a shareholder may bring a derivative suit on a corporate right, she must demand that the corporation's directors bring suit. (*Babcock v. Farwell* (1910), 245 Ill. 14, 91 N.E. 683.)

Demand is excused where "the majority of the directors are themselves involved in the matters complained of, so that it is evident that the demand would be unavailing * * *." (*Babcock*, 245 Ill. 14, 46, 91 N.E. 683, 694.) In alleging that demand is excused because it would be unavailing, plaintiff must plead facts, not conclusions. *Osborne v. Morgan* (1912), 171 Ill. App. 549.

■■ Plaintiff alleged that a demand would have been futile because, among other reasons, all 14 of the Association's directors are also directors of the Insurance Agency and are jointly and severally liable for participating in, authorizing, or acquiescing in the usurpation of a corporate opportunity. We find that these allegations when read in conjunction with other paragraphs of plaintiff's complaint were sufficiently explicit to excuse making a demand on the Association's directors.

Elsewhere in the complaint, plaintiff alleged that the individual defendants were engaged in conflicts of interest for their own financial benefit. Though plaintiff has failed to specifically allege what the financial benefit might be, we believe that the allegation with respect to the similarity of directorships on the Association and Insurance Agency states a conflict of interest situation. The potential for a conflict of interest is great where the persons expected to sue are the same as some of the persons to be sued. (See, *e.g., Phillips v. Bradford* (S.D.N.Y. 1974), 62 F.R.D. 681.) This potential is even greater where the persons suing are directors of a Federal savings and loan association and the persons being sued are directors of a corporation since both groups of directors owe a fiduciary duty to their respective members or shareholders. (*Kerrigan v. Unity Savings Association* (1974), 58 Ill. 2d 20, 317 N.E.2d 39.) In such a situation, self interest would be joined by a duty to preserve corporate assets. Under such a dual burden it would be both unreasonable and futile to expect the Association's directors to effectively preserve the rights of the Association's members. In the instant case, all of the Association's directors are also directors of the Insurance Agency. Under these circumstances, it would be both unreasonable and futile to expect the Association's directors, who owe a fiduciary duty to the Association's members, to sue the Insurance Agency's directors (including themselves), who owe a fiduciary duty to the officers, directors, and employees of the Association.

Defendants argue that a conflict of interest situation does not necessarily exist since the creation of a pension fund for the Association's employees is a sound Association purpose and there is no allegation that the funds provided by the Insurance Agency in any way increase or affect the amount of any pension that the employees might receive upon retirement. In making this argument, however, defendant misconstrues plaintiff's claim. Plaintiff does not claim that the creation of a pension fund

is an improper Association purpose or that the funds provided by the Insurance Agency in any way increase or otherwise affect the amount of pension which an employee might receive. At this point in the litigation, she claims merely that the Association's directors are so obviously in a conflict of interest situation because of their dual role as directors of the Association and directors of the Insurance Agency that a demand upon them to bring suit would be futile. As already indicated, we agree.

Furthermore, we believe it would be both unreasonable and futile to expect the Association's directors to bring suit because they participated in, authorized, or acquiesced in the usurpation of the corporate opportunity. Plaintiff has stated sufficient facts to support this allegation. Initially, she states that the rules and regulations for Federal savings and loan associations and the Association's charter and by-laws prescribe that the business and affairs of the Association shall be exercised by the directors and officers. She then delineates the various acts of the Association which constitute the diversion and usurpation in this case. These acts could not have been performed without prior approval of at least a majority of the directors and officers. Under these circumstances, where at least a majority of the Association's directors would have approved of the acts complained of, a demand was also unnecessary. See *Robb v. Eastgate Hotel, Inc.* (1952), 347 Ill. App. 261, 106 N.E.2d 848.

## II

In addition to the two grounds upon which the trial court based its dismissal of plaintiff's complaint, defendants claim that a dismissal was proper because plaintiff failed to (1) make a demand for action on members of the Association and (2) allege sufficient facts to support the allegations of fraud on information and belief. We disagree.

■■ Though there is language in some cases indicating that a shareholder must make a demand on the shareholders as a body before instituting a derivative action (*McIlvaine v. City National Bank & Trust Co.* (1942), 314 Ill. App. 496, 521, 42 N.E.2d 93, 105; *Goldberg v. Ball* (1940), 305 Ill. App. 273, 281-82, 27 N.E.2d 575, 579), the weight of authority in Illinois requires only that a demand be first made on the directors of a corporation. (*Babcock v. Farwell* (1910), 245 Ill. 14, 91 N.E. 683; *Karris v. Water Tower Trust & Savings Bank* (1979), 72 Ill. App. 3d 339, 389 N.E.2d 1359; *Schmidt v. Crowell-Collier Publishing Co.* (1953), 349 Ill. App. 229, 110 N.E.2d 464.) Once this demand has been properly made and refused, or excused for some reason, a shareholder may proceed with his derivative action. Also, though plaintiff has alleged that the Association's directors and officers have breached their fiduciary duty by illegally and *fraudulently* diverting and usurping the corporate

opportunity, we do not believe that such an allegation makes out a cause of action for fraud. Plaintiff's complaint alleges breaches of a fiduciary duty and a usurpation and diversion of a corporate opportunity amounting to a constructive fraud. We find that she has alleged sufficient facts to support such causes of action.

Reversed and remanded.

SULLIVAN, P. J., and MEJDA, J., concur.

## SUPPLEMENTAL OPINION ON REHEARING

Mr. JUSTICE WILSON delivered the opinion of the court:

On petition for rehearing, defendants contend that our opinion misapprehended or overlooked certain points with respect to the primary jurisdiction and demand questions. Although we grant the petition[1], in reconsidering our opinion, we find it unnecessary to change it, except as modified herein. We do, however, find it imperative that we respond to one of the points raised by defendants.

Defendants argue that in our resolution of the primary jurisdiction question we incorrectly relied upon cases (*Nadler v. Allegheny Airlines, Inc.* (1976), 426 U.S. 290, 48 L. Ed. 2d 643, 96 S. Ct. 1978; *Rosado v. Wyman* (1970), 397 U.S. 397, 25 L. Ed. 2d 442, 90 S. Ct. 1207) involving agencies other than the Federal Home Loan Bank Board (Board). They claim that we should have instead relied upon *Murphy v. Colonial Federal Savings & Loan Association* (2d Cir. 1967), 388 F.2d 609, and *Mortensen v. First Federal Savings & Loan Association* (3d Cir. 1977), 549 F.2d 884, two cases involving the Board. We find no need to alter our disposition of the primary jurisdiction question on the basis of these cases.

---

[1] In responding to this petition, and reaffirming our original opinion, we assume that plaintiff has a private cause of action under the Home Owners' Loan Act of 1933 (12 U.S.C. §1461 *et seq.* (1976)). (*Goldman v. First Federal Savings & Loan Association* (7th Cir. 1975), 518 F.2d 1247, 1250 n.6.) Two recent United States Supreme Court cases, however, have taken a very restricted view of the implication of private causes of action in Federal statutes. (*Transamerica Mortgage Advisors, Inc. (TAMA) v. Lewis* (1979), 441 U.S. 11, 62 L. Ed. 2d 146, 100 S. Ct. 242; *Touche Ross & Co. v. Redington* (1979), 442 U.S. 560, 61 L. Ed. 2d 82, 99 S. Ct. 2479.) Prior to these decisions, case law supported the implication of a private cause of action under the Home Owners' Loan Act of 1933. (See, *e.g.*, *Milberg v. Lawrence Cedarhurst Federal Savings & Loan Association* (2d Cir. 1974), 496 F.2d 523; *City Federal Savings & Loan Association v. Crowley* (E.D. Wisc. 1975), 393 F. Supp. 644; *Gibson v. First Federal Savings & Loan Association* (E.D. Mich. 1972), 347 F. Supp. 560.) Now, in light of the restricted view taken by the Supreme Court, there is some doubt. As a result, we decline to rule on that question at this time. Nonetheless, since the question of whether a private cause of action exists is not jurisdictional, it may be assumed without being decided. *Burks v. Lasker* (1979), 441 U.S. 471, 476 n.5, 60 L. Ed. 2d 404, 411 n.5, 99 S. Ct. 1831, 1836 n.5.

The reviewing courts in *Murphy* and *Mortensen* found the primary jurisdiction doctrine to be applicable despite the fact that plaintiffs could not demand a hearing before the Board. Yet, in each of those two cases, initial resort to the Board was necessary for an interpretation of a Board regulation. In *Murphy,* the Board was asked to determine whether one of the Board's regulations which provided that association member could vote in person or by proxy, also provided a member desiring to enlist the aid of others in an election the right to find out who they are. In *Mortensen,* the Board was asked to determine under conflicting regulations whether certain legal services rendered in conjunction with a loan application were rendered for the association or for the home buyers. In both cases, preliminary resort to the Board could materially aid the course of litigation. In the present case, preliminary resort to the Board was unnecessary.

As indicated in our opinion, Board regulations make it clear that a savings and loan association may engage in the insurance business (12 C.F.R. 5545.9—1 (1979)) and that a usurpation of such an opportunity violates Federal regulations and constitutes a breach of a fiduciary relationship. (12 C.F.R. 5571.9 (1979).) Section 571.9 of the Board's regulations provides:

"(a) Directors and officers of an insured institution, and other persons having the power to direct the management of the institution, stand in a fiduciary relationship to the institution and its accountholders or shareholders. Out of this relationship arises, among other things, the duty of protecting the interests of the institutions. It is a breach of this duty for such a person to take advantage of a business opportunity for his own or another person's personal profit or benefit when the opportunity is within the corporate powers of the institution or a service corporation of the institution and when the opportunity is of present or potential practical advantage to the institution. If such a person so appropriates such an opportunity, the institution or service corporation may claim the benefit of the transaction or business and such person exposes himself to liability in this regard. *In determining whether an opportunity is of present or potential practical advantage to an institution, the Corporation will consider, among other things, the financial, managerial, and technical resources of the institution and its service corporation, and the reasonable ability of the institution directly or through a service corporation to acquire such resources.*

(b) The Board believes that usurpation of an insured institution's corporate opportunity to engage in the insurance business, to the extent that such a usurpation is found to exist under State law, is

violative of §§571.7 and 571.9(a) of this subchapter, is inconsistent with sound and economical home financing, and also constitutes an unsafe and unsound practice. In such a case, the Board believes that the insured institution is entitled to profits attributable to the usurpation of the corporate opportunity as provided under paragraph (f) of §555.17 of this chapter." (Emphasis added.)

The only questions left unresolved by this regulation are whether the corporate opportunity is of present or potential practical advantage to the defendant Federal savings and loan association and whether a usurpation has occurred. The resolution of the first question in accordance with the guidelines set forth in the regulation is something within the conventional competence of the courts. A court's resolution of this question is not assailable on grounds that it will lead to uncoordinated and conflicting requirements because the question itself does not lend itself to a uniform answer. Resolution of the second question has been expressly stated as being resolved by State law. Since there is no unanswered question or issue which needs a preliminary answer by the Board, the primary jurisdiction doctrine is inapplicable in this case.

Except as modified herein, our original opinion and this additional opinion on rehearing will stand as the opinion of the court. The order appealed from is reversed and the cause remanded for further proceedings in conformity with the views expressed therein.

Reversed and remanded.

SULLIVAN, P. J., and MEJDA, J., concur.