**RESOLUTION TRUST CORPORATION, Plaintiff–Appellant,**

v.

**Henry CHAPMAN, et al., Defendants–Appellees.**

**No. 93–1514.**

United States Court of Appeals, Seventh Circuit.

Argued May 20, 1994.

Decided July 12, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied Sept. 8, 1994.*

---

\* Judge Cummings did not participate in the consideration or decision of this case. Chief Judge

Posner and Judges Ripple and Rovner voted for rehearing en banc.

William A. Spence (argued), Carole A. Corns, Freeborn & Peters, Walter Jones, Jr., Jorge V. Cazares, Pugh, Jones & Johnson, Chicago, IL, Duane Curtis, Resolution Trust Corp., Legal Div./PLS, Overland Park, KS, David M. FitzGerald, Resolution Trust Corp., Washington, DC, for plaintiff-appellant.

Roy G. Davis (argued), Timothy D. Church, David G. Lubben, Keck, Mahin & Cate, Peoria, IL, Gregg N. Grimsley, Vonachen, Lawless, Trager & Slevin, Peoria, IL, for defendants-appellees.

Before POSNER, Chief Judge, and EASTERBROOK and ROVNER, Circuit Judges.

EASTERBROOK, Circuit Judge.

Eight months ago we held that "Congress 'spoke directly' to the issue of what standard of liability governs suits by the RTC [Resolution Trust Corporation] against officers and directors of failed federally chartered financial institutions." *RTC v. Gallagher*, 10 F.3d 416, 419 (7th Cir.1993). That standard, we concluded, is gross negligence, according to the terms of 12 U.S.C. § 1821(k).

Here we go again. The RTC is suing the former directors and officers of Security Savings and Loan Association, a failed federally chartered financial institution, on the theory that their negligence damaged the S & L's financial standing and thus injured the federal deposit insurance fund. The portions of the complaint now before us (on an interlocutory appeal under 28 U.S.C. § 1292(b), after the district court dismissed the claims on the pleadings) assert that the directors and officers violated their duty of care by simple negligence, for which the RTC seeks to recover damages.

How, consistent with *Gallagher*? Well, the RTC disagrees with that decision and seeks to preserve its position for review in the Supreme Court. Done. But the RTC

contends that it should prevail even if *Gallagher* is correct. That is hard to pull off; the opinion in *Gallagher* held that § 1821(k) establishes a gross negligence standard for officers and directors of federally chartered institutions, of which Security was one. *Gallagher* is of a piece with other recent decisions emphasizing that when Congress has provided expressly for some subject, courts should not use principles of federal common law to reach different conclusions. E.g., *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, —— U.S. ——, ——- ——, 114 S.Ct. 1439, 1448–52, 128 L.Ed.2d 119 (1994); *Musick, Peeler & Garrett v. Employers Insurance of Wausau,* —— U.S. ——, ——- ——, 113 S.Ct. 2085, 2090–91, 124 L.Ed.2d 194 (1993); *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. 350, 360–62, 111 S.Ct. 2773, 2781, 115 L.Ed.2d 321 (1991). Courts should be leery of all claims invoking federal common law; suits arising out of bank failures are no exceptions. *O'Melveny & Myers v. FDIC,* —— U.S. ——, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994).

■ The RTC sees an opening in the fact that *Gallagher* did not decide whether § 1821(k) precludes liability under state law. 10 F.3d at 424. According to the RTC, it may recover from Security's directors and officers for simple negligence under Illinois law. Defendants reply that any application of state law is preempted, but this position is untenable. The final sentence of § 1821(k) says: "Nothing in this paragraph shall impair or affect any right of the Corporation under other applicable law." We concluded in *Gallagher* that the minimum effect of this sentence is that the RTC may take regulatory actions such as removing directors on the basis of simple negligence. 10 F.3d at 420–21. Two courts of appeals have held that this language also ensures that actions based on state law are not preempted. *FDIC v. McSweeney,* 976 F.2d 532, 537–41 (9th Cir. 1992); *FDIC v. Canfield,* 967 F.2d 443 (10th Cir.1992) (en banc). Even if we doubted the correctness of these holdings, which we do not, we would not think it prudent to create a conflict among the circuits. Clauses similar to the final sentence of § 1821(k) regularly are understood to save state law against claims of preemption. E.g., *International Paper Co. v. Ouellette,* 479 U.S. 481, 497–500, 107 S.Ct. 805, 814–16, 93 L.Ed.2d 883 (1987); *Amanda Acquisition Corp. v. Universal Foods Corp.,* 877 F.2d 496, 502 (7th Cir. 1989); *Myrick v. Fruehauf Corp.,* 13 F.3d 1516 (11th Cir.1994); cf. *Cipollone v. Liggett Group, Inc.,* —— U.S. ——, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). Thus the RTC may take advantage of any claims available to it under state law.

■ Has it any? We may assume that Illinois permits recovery against negligent officers and directors of financial institutions incorporated in that state. *Chicago Title & Trust Co. v. Munday,* 297 Ill. 555, 131 N.E. 103 (1921). The pivotal question then is the appropriate choice of law. When the subject is liability of officers and directors for their stewardship of the corporation, the law presumptively applicable is the law of the place of incorporation. This venerable choice-of-law principle, known as the internal affairs doctrine, is recognized throughout the states, and by the Supreme Court as well. *CTS Corp. v. Dynamics Corp. of America,* 481 U.S. 69, 89–93, 107 S.Ct. 1637, 1649–52, 95 L.Ed.2d 67 (1987); *First National City Bank v. Banco Para el Comercio Exterior de Cuba,* 462 U.S. 611, 621, 103 S.Ct. 2591, 2597, 77 L.Ed.2d 46 (1983); *Edgar v. MITE Corp.,* 457 U.S. 624, 645, 102 S.Ct. 2629, 2642, 73 L.Ed.2d 269 (1982); see also 4 *Model Business Corporation Act Annotated* 1631–42 (3d ed. 1993) (collecting state authority); Deborah A. DeMott, *Perspectives on Choice of Law for Corporate Internal Affairs,* 48 L. & Contemp. Prob. 161 (1985). Illinois adheres to this principle. 805 ILCS 5/13.05 ("nothing in this Act contained shall be construed to authorize this State to regulate the organization or the internal affairs of such corporation [chartered in another jurisdiction]."). The internal affairs doctrine recognizes the benefits of using one rule of law to determine the duties and liability of directors and officers whose firm may do business in many states. "[O]therwise a corporation could be faced with conflicting demands." *Edgar,* 457 U.S. at 645, 102 S.Ct. at 2642. See *Restatement (2d) of Conflict of Laws* § 302 (1971). Cf. *Kamen v. Kemper Financial Services,*

*Inc.*, 500 U.S. 90, 105–06, 111 S.Ct. 1711, 1721, 114 L.Ed.2d 152 (1991).

No one doubts that Illinois would apply the law of the place of a bank's incorporation if that place were another state. See *Paulman v. Kritzer*, 74 Ill.App.2d 284, 219 N.E.2d 541 (2d Dist.1966), affirmed, 38 Ill.2d 101, 230 N.E.2d 262 (1967); see also *Treco, Inc. v. Land of Lincoln Savings & Loan Ass'n*, 749 F.2d 374, 377 (7th Cir.1984). Until recently a state might have supposed that applying state law to federal banks and savings associations would not present any risk of inconsistent obligations, and therefore would fall outside the logic (if not the formal terms) of the internal affairs doctrine. Multi-state and inter-state banking were rare until the 1980s. Illinois was a unit banking state; no bank doing business in Illinois could have branches. It is therefore not surprising that some Illinois courts treated a bank's place of incorporation as irrelevant; to do business in Illinois was to be "an Illinois bank" without regard to the difference between federal and state incorporation. *Fields v. Sax*, 123 Ill. App.3d 460, 463–65, 78 Ill.Dec. 864, 867–68, 462 N.E.2d 983, 986–87 (1st Dist.1984) (citing federal and state rules interchangeably for federally chartered bank); *Valiquet v. First Federal Savings & Loan Ass'n of Chicago*, 87 Ill.App.3d 195, 199–200, 42 Ill.Dec. 212, 408 N.E.2d 921, 925–26 (5th Dist.1979) (same). All of that has changed, however. Illinois now allows multi-state operations, and throughout the state one may find offices of financial institutions incorporated elsewhere. Security was itself a multi-state institution, with branches in North Dakota as well as Illinois. The advent of inter-state banking puts the choice of law question in focus and leads us to apply the internal affairs doctrine to this case. Security held a federal charter, so national law governs the liability of officers and directors for their management.

█ Although the internal affairs doctrine points to federal law, there is no federal corporate code. Does this mean that the choice-of-law doctrine points nowhere? Not necessarily. Until the last decade, the rules of managerial liability for corporations holding state charters had been developed in common law fashion. Attempts to codify the duty of care, the duty of loyalty, and the business judgment rule are novel developments in corporate law. "[T]he general standard of care imposed on directors was developed by the judiciary as part of the common law duties of directors; statutes defining this duty are a relatively recent phenomenon. Such a definition was first included in the Model [Business Corporation] Act in 1974 in the form of a substantial addition to section 35 of the 1969 Model Act." 2 *Model Business Corporation Act Annotated* 933 (3d ed. 1993 Supp.). See also ALI, 1 *Principles of Corporate Governance: Analysis and Recommendations* 134 (1992) ("Historically, courts rather than legislatures have played the central role in shaping the law regarding the duty of care of corporate directors and officers."). Federal courts have no less authority to shape a common law for federal corporations than state courts have had to devise a common law for firms incorporated in their jurisdictions. *Bowerman v. Hamner*, 250 U.S. 504, 510, 39 S.Ct. 549, 551, 63 L.Ed. 1113 (1919); *Briggs v. Spaulding*, 141 U.S. 132, 11 S.Ct. 924, 35 L.Ed. 662 (1891). See generally Henry J. Friendly, *In Praise of Erie—and of the New Federal Common Law*, 39 N.Y.U.L.Rev. 383 (1964), reprinted in *Benchmarks* 155–95 (1967). But just as states have begun to adopt statutes spelling out managers' duties, so Congress has adopted some rules for federally chartered banks and authorized the banking regulators to promulgate others. There is, for example, an elaborate set of federal regulations covering mergers and other major corporate transactions of federally chartered thrifts. See *Ordower v. OTS*, 999 F.2d 1183 (7th Cir.1993) (discussing several of these rules). Of particular relevance today, Congress enacted § 1821(k). We concluded in *Gallagher* that this statute adopts gross negligence as the rule for managers and directors of federal financial institutions. We need not devise federal common law; Congress has laid down the law.

█ Perhaps, however, we should not apply the internal affairs doctrine for ourselves but should ask what principles Illinois would apply. So the RTC submits, contending that *Fields v. Sax* requires the application of Illi-

nois substantive law. It is far from clear to us that *Fields* holds any such thing; the court jumbled state and federal cases together, apparently believing that the choice of law did not matter. After *Gallagher*, it matters. What law Illinois courts would choose is, however, irrelevant. This is not a diversity case, where *Erie* would require the forum court to apply the whole law of the state, including its choice of law principles. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). It is a suit by a federal agency invoking federal jurisdiction per 12 U.S.C. § 1441a(*l*)(1), which says that suits to which the RTC is a party "shall be deemed to arise under the laws of the United States". Federal law may well look to state law for substantive principles, see *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 727–29, 99 S.Ct. 1448, 1457–59, 59 L.Ed.2d 711 (1979), but which law to select is itself a question of federal law, as *Kimbell Foods* and *O'Melveny & Myers* show. The Supreme Court in *O'Melveny & Myers* did not ask what law a state court would have selected; it approached the question as one for independent decision. See also *Eckstein v. Balcor Film Investors*, 8 F.3d 1121, 1126–27 (7th Cir. 1993).

According to the RTC, federal choice of law principles adopt state rules of decision notwithstanding the internal affairs doctrine. The RTC relies on cases such as *Anderson National Bank v. Luckett*, 321 U.S. 233, 64 S.Ct. 599, 88 L.Ed. 692 (1944), for the proposition that "national banks are subject to state laws, unless those laws infringe the national banking laws or impose an undue burden on the performance of the banks' functions." *Id.* at 248, 64 S.Ct. at 607. See also, e.g., *McClellan v. Chipman*, 164 U.S. 347, 356–57, 17 S.Ct. 85, 87, 41 L.Ed. 461 (1896). If the question before us were whether Security could establish a new branch, whether it could redecorate a building designated an historic landmark, or when funds escheat after depositors vanish, these observations would be controlling. Delaware petrochemical corporations also must follow Illinois law when selling products in Illinois. *Luckett, McClellan,* and similar cases have nothing to do with the internal affairs of corporations. To the extent the RTC acts as receiver, it inherits the corporation's claims against the directors and officers, so the internal affairs doctrine applies normally. The RTC gets no more rights than the firm itself had. To the extent the RTC depicts itself as a third party—more like a victim of a tort than like a firm seeking to hold its managers accountable for the benefit of investors—that serves only to put the case squarely in the realm of federal law. Federal banking agencies love to remind courts that, when suing in their corporate capacities to collect debts and protect the deposit insurance fund, they receive the benefits of federal law under *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447, 456, 62 S.Ct. 676, 679, 86 L.Ed. 956 (1942). Even if *D'Oench, Duhme* is not an apt analogy, the approach of *Kimbell* (the only remaining option) does not help the RTC. For *Kimbell* tells us to use state law unless Congress has enacted a national rule. When there is such a national rule, we apply it. *United States v. Einum*, 992 F.2d 761 (7th Cir.1993). *Gallagher* holds that § 1821(k) is just such a rule of national law.

Doubtless the RTC believes that a need to prove gross negligence will unduly diminish its recoveries. In *O'Melveny & Myers* the banking agency wanted the Court to apply federal law, because that would increase damages; here the banking agency clamors for state law, for the same reason. In *O'Melveny & Myers* the FDIC pointed out that California followed a minority rule of accountants' liability and asked the Court to go with the dominant approach to the subject. In this case the RTC has located a state that applies a minority rule (simple negligence) to directors' and officers' liability and asks us to apply that state's law rather than the more common business judgment rule that shelters managers who did not act in bad faith. See *Principles of Corporate Governance* § 4.01 and reporter's note 18 at 160; 2 *Model Business Corporation Act Annotated* 926.1–958. Both the FDIC (in *O'Melveny & Myers*) and the RTC (in this case) seem uninterested in applying neutral principles of law. *O'Melveny & Myers* holds that it is not our job to maximize the federal "take" in bank failures. Our task is to apply

generally applicable principles, which here entail the use of § 1821(k). To say otherwise is to reject the holding of *Gallagher*, the decision of Congress, or both. We shall do neither.

AFFIRMED.

ROVNER, Circuit Judge, concurring.

Although I join Judge Easterbrook's opinion, I am sympathetic to the sentiments expressed by the dissent. I am ultimately unpersuaded by the dissent, however, as I agree with Judge Easterbrook that the internal affairs doctrine compels application of federal law to the internal affairs of a federally-chartered financial institution. Of course, that conclusion leads inevitably to our decision in *Resolution Trust Corp. v. Gallagher*, 10 F.3d 416 (7th Cir.1993), which would require the RTC to prove gross rather than simple negligence in a case such as this one. I share the dissent's concerns with the panel's decision in that case. (*See post* at 1127.) Yet the *Gallagher* panel was unanimous, and the court refused to rehear the case en banc in December of last year. We are therefore bound to follow *Gallagher*, and I accordingly do so today.

POSNER, Chief Judge, dissenting.

The issue presented by the appeal in this directors' liability suit is the standard of care to which to hold the directors of savings and loan associations in Illinois sued by the Resolution Trust Corporation. The Security Savings & Loan Association received a charter from the State of Illinois in 1880, and opened for business that year in Peoria. A century later, in 1982, Security exchanged its state charter for a federal one. Seven years later it went broke and passed into the hands of the RTC, which brought this suit against Security's former directors to obtain damages for their negligent mismanagement of Security's lending and investment activities during the period, as it happens, after Security became a federal S & L. The directors' negligence is alleged to have harmed Security's shareholders, to whose rights the RTC has succeeded, and it is that harm which the suit seeks to redress. The question we are asked to decide is whether the defendants can be held liable for simple negligence, in light of 12 U.S.C. § 1821(k), passed the year Security went broke and conceded (at least for purposes of this appeal) to be applicable to this suit.

That statute (on which see generally David B. Fischer, Comment, "Bank Director Liability under FIRREA: A New Defense for Directors and Officers of Insolvent Depository Institutions—Or a Tighter Noose?" 39 *UCLA L.Rev.* 1703 (1992)) empowers the RTC to sue the directors of federally insured financial institutions for gross negligence or any greater disregard of duty; but "nothing in this [section] shall impair or affect any right of the [RTC] under other applicable law." So if a state tries to immunize the directors of such institutions from liability for any nonintentional act, even if grossly negligent, the RTC can still sue; and by virtue of the saving clause it can sue for simple negligence if applicable state law makes the directors liable for simple negligence. See *FDIC v. Canfield*, 967 F.2d 443, 448–49 (10th Cir.1992) (en banc); *FDIC v. McSweeney*, 976 F.2d 532, 537–41 (9th Cir.1992).

All this is clear and straightforward if the institution, though federally insured, is state chartered, as in the *Canfield* and *McSweeney* cases. But what if, as in this case (during the relevant period) and *Resolution Trust Corp. v. Gallagher*, 10 F.3d 416 (7th Cir. 1993), the institution has a federal charter, albeit of recent vintage? *Gallagher* holds that in such a case the courts will not create a federal common law of directors' liability, but will simply enforce the standard of liability set forth in section 1821(k). Today we hold that, despite the saving clause, state law is inapplicable as well, because disputes involving the internal affairs of a corporation, including the duties of directors to their shareholders (in whose shoes the RTC stands), are governed by the law of the chartering jurisdiction, in this case the federal government, and the applicable law of that jurisdiction is 1821(k). So the RTC must prove gross negligence, even though Illinois law makes the directors of financial institutions to which its law applies liable to shareholders for simple negligence.

This is a neat, tidy, "logical" chain of reasoning, but it flattens the internal-affairs doctrine and like *Gallagher* it applies 1821(k) outside of its intended domain, and with ironic results. These are separate errors, and let me begin with the second, the statutory error, where my colleagues are less culpable because they have the support of *Gallagher*, a recent decision by this court.

The purpose of section 1821(k), as the timing of the statute's enactment and other features of its history make clear, was to place a floor under the liability of directors of savings and loan associations, which were falling like ninepins. A number of states had, beginning in the early 1980s, passed laws limiting the liability of corporate directors for mismanagement of corporate affairs. James J. Hanks, Jr., "Evaluating Recent State Legislation on Director and Officer Liability Limitation and Indemnification," 43 *Bus. Law.* 1207 (1988); Fischer, *supra,* 39 *UCLA L.Rev.* at 1739–40; *FDIC v. McSweeney, supra,* 976 F.2d at 539. The purpose of the new federal statute was to preempt those laws to the extent they shielded directors from liability for gross negligence or worse misconduct. *Id.* at 540; 135 Cong.Rec. S4278–79 (June 24, 1994) (remarks of Senator Riegle, the bill's sponsor). The saving clause ensured that if a state went further than the federal statute, and punished simple negligence by directors, the RTC could use state rather than federal law.

The liability of directors of S & Ls which happened to have federal rather than state charters was not discussed, even though more than half of all S & Ls were federally chartered. National Commission on Financial Institutional Reform, Recovery and Enforcement, *Origins and Causes of the S & L Debacle: A Blueprint for Reform: A Report to the President and Congress of the United States* 53 (G.P.O. July 1993) (tab. 4). The likeliest reason for the apparent oversight is that there was no history of having to decide which jurisdiction's law would govern a particular dispute over directors' liability. Directors' liability had been primarily a common law field; the pertinent common law doctrines (the business-judgment rule, the duty of loyalty, etc.) had been similar across states and similar also to the federal common law of directors' liability, dating from the era of *Swift v. Tyson;* and banks and related financial institutions were invariably local rather than multistate, so potential interstate conflicts in the obligations of bank directors could not arise. Congress is not gifted with omniscience and does not have the leisure to be able to tie a pretty ribbon around every piece of legislation, and so it often either overlooks or chooses not to attempt to solve problems that lack present salience or urgency. The use by judges of the form of words that Congress has employed to deal with the problem that was before it—in this case, the problem of states' curtailing the liabilities of directors—to solve a problem of which there is no evidence that Congress was even aware is a formula for the perversion of legislative purpose. We play "Gotcha!" with Congress. We make traps of its words.

Congress, or more precisely those members who thought about the issue—but it was a hot issue, after all—believed that by passing section 1821(k) it was empowering the RTC to obtain damages whenever directors were grossly negligent (or worse), regardless of the provisions of state law. There is no evidence that Congress believed it was creating a new immunity for directors of federal S & Ls by depriving the RTC of the benefit of state laws that imposed higher duties on directors.

Even if we indulge the fiction that Congress was secretly aware of the internal-affairs doctrine of corporation law and secretly intended it to apply to suits by the RTC against federally chartered S & Ls, it does not follow, as the court believes, that the doctrine would bar the application of Illinois law in this case. Properly understood, it would not. In cases of directors' liability, automatic reference to the law of the state of incorporation is rejected. E.g., *Norlin Corp. v. Rooney, Pace Inc.,* 744 F.2d 255, 263–64 (2d Cir.1984); *Mansfield Hardwood Lumber Co. v. Johnson,* 268 F.2d 317, 320–21 (5th Cir.1959); *Ficor, Inc. v. McHugh,* 639 P.2d 385 (Colo.1982). Instead the doctrine is interpreted to only *presumptively* apply the law of the state of incorporation. *Restatement (Second) of Conflict of Laws* § 309 and

comment c (1971). The presumption can be rebutted by reference to (among other things) "justified expectations," "certainty," and "ease in the determination and application of the law to be applied." *Id.,* §§ 6(d), 6(f), 6(2)(g), 309. All are considerations that favor the application of Illinois law to this case. Consider justified expectations: Everyone connected with Security would have thought Illinois law applicable to a dispute of this character. Security had been an Illinois corporation for a century, and nothing in the text or provision of the statute under which it converted to a federal S & L would have suggested that the liability of its directors or officers was being altered by the change. 12 U.S.C. § 1464(i)(1); S.Rep. No. 97–536, 97th Cong., 2d Sess. 13–15, 53 (1982), reprinted in 1982 U.S.C.C.A.N. 3054, 3066–3069, 3107. (There was, of course, no 1821(k) when it converted.) Consider next certainty and ease in the determination and applicable of the law. This case well illustrates the difficulty of determining the rule of decision if federal law, the law of the chartering jurisdiction, is applied instead of the law of the S & L's principal place of business. For it is far from clear that section 1821(k), rather than federal common law, is the place to find that rule, and it is also unclear, as we shall see, just what the federal common law rule is. There is no comparable uncertainty about the contents of the Illinois law of directors' liabilities. Finally, the policy animating the presumption in favor of applying the law of the state of incorporation—the policy of shielding directors and officers from conflicting legal obligations—is not engaged by the facts of this case, as there is no suggestion that these directors have been or will be sued under the law of another state.

When these considerations are taken into account, as they should be if we are to be faithful to the internal-affairs doctrine as it has been traditionally understood, it seems plain that the doctrine does not require the application of federal law in this case. That should be the end of the case, and *Gallagher* would then be untouched.

If I am wrong about the internal-affairs doctrine—or if I am right, but the doctrine should be changed, should be converted from a presumption to a rigid rule, in reaction to the uncertainty of the "modern" approach to conflicts of law, reflected in the *Second Restatement* (although this would be the worst case for such a venture, so plain is it that Illinois rather than federal law should apply, and so unlikely is it that Congress would have wanted the doctrine rigidly applied to defeat the stricter standard)—and if there were no section 1821(k), the next issue would be the choice of a standard to do service as the federal common law rule of directors' liability. The court does not say what standard it would choose, so I am free to assume that it would agree with me that the proper standard would be one that made these directors liable for simple negligence. This was assumed in *Resolution Trust Corp. v. Gallagher, supra,* 10 F.3d at 423, but not discussed; the cases are all over the lot. Fischer, *supra,* 39 *UCLA L.Rev.* at 1712–26. Assuming that simple negligence is the federal common law rule, or would be in the absence of section 1821(k), one can appreciate what mischief that statute is made to do by our decision. The enactment of section 1821(k) is taken as a declaration that Congress wants the liability of directors of federal financial institutions to be limited to gross negligence or worse. (This is provided the institutions are broke; if they are solvent, the directors remain liable to suits by the federal regulatory bodies for simple negligence. Fischer, *supra,* 39 *UCLA L.Rev.* at 7160. Crazy!) What would otherwise be a more stringent standard, that of simple negligence, is diluted by interpretation of a statute intended to make the liability of such directors more stringent. The statute has been turned on its head.

I acknowledge that *Gallagher* is riven by a similar paradox. If pressed I might recommend that the full court, sitting en banc, consider whether to overrule it (cf. 7th Cir.R. 40(f)), despite its recency; but at least I would not extend it. To get out from under its shadow in this case we need only hold— consistent with the traditional understanding of the internal-affairs doctrine (and the one most likely to have commended itself to Congress, had it thought about the question when it enacted section 1821(k)), and with the statute's saving clause—that the RTC is

entitled to hold Security's directors to the standard of care in Illinois law. If *Gallagher* was decided erroneously, let us not compound the error by misapplying the internal-affairs doctrine.