In the

# United States Court of Appeals
### For the Seventh Circuit

No. 02-4081

FEDERAL DEPOSIT INSURANCE CORPORATION,

*Plaintiff-Appellant,*

*v.*

DAVID J. WABICK, PATRICIA A. WABICK,
LAWRENCE ETTNER, et al.,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 8674—**Milton I. Shadur**, *Judge.*

ARGUED JUNE 3, 2003—DECIDED JULY 10, 2003

Before FLAUM, *Chief Judge,* and BAUER and EVANS,
*Circuit Judges.*

FLAUM, *Chief Judge.* The defendants, David Wabick,
Patricia Wabick, Lorraine Wabick, Larry Ettner, Janelle
Ettner, and Paul Freitag,[1] (collectively "defendants") al-
legedly participated in a scheme to defraud the Resolution
Trust Corporation ("RTC") in 1992. The scheme succeeded
with the defendants improperly winning a sealed auction

---

[1] Of these defendants only Larry and Janelle Ettner filed briefs
and only their counsel participated in oral arguments.

of financial assets. The assets were sold at an allegedly depressed price to the defendants for $66,750,000. Despite the magnitude of the transaction involved, the Federal Deposit Insurance Corporation ("FDIC"), successor to the RTC, did not bring suit against the defendants until nine years after the fraud—seven years after the RTC became aware of a Department of Justice ("DOJ") investigation into the scheme, and four years after the DOJ indicted one of the defendants. The FDIC is now left struggling to have the courts apply the most lenient statute of limitations in order to keep this case from being removed from court as untimely, and we in turn are faced with questions of choice-of-law principles and statute-of-limitations application. The FDIC argues that *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), requires us to apply state choice-of-law principles in choosing which statute of limitations to apply. The district court disagreed and applied federal choice-of-law rules and determined that under the limitations resulting from those rules the FDIC is barred from bringing this suit. Though the district court's conclusion reasonably rejected the FDIC's *Erie* argument, we disagree with the parties and the district court that this case even presents a choice between an application of the *Erie* doctrine and federal common law; instead, this case can be resolved by following a statutory directive to apply state choice-of-law principles. We therefore reverse.

## I.  Background

In 1992 the RTC became the receiver for Home Federal Savings Association of Kansas City, F.A., a lending institution that had been declared insolvent. As receiver RTC decided to sell various outstanding loans that were owned by the insolvent lending institution. Among these loans was a group of non-performing and sub-performing

real estate loans known as the Merit Loans. The debtors on the Merit loans were all entities owned or controlled by Albert Ichelson, Jr. The RTC grouped the merit loans into a bid package with other loans to be auctioned off through a sealed bidding process.

Meanwhile, David Wabick and Larry Ettner formed Gateway Capital under Illinois corporation laws in June of 1992. David's wife Patricia owned one half of Gateway Capital while Larry and his wife Janelle owned the other half. David and Larry managed the company. David also controlled Connaught Corporation ("Connaught"), an Illinois corporation. This caused a problem for Gateway Capital, which had as its purpose the purchase of the Merit Loans in the auction, because Connaught had previously defaulted on obligations to the RTC and the FDIC. Corporations and their affiliates who had previously defaulted on obligations to the RTC or the FDIC were ineligible for bidding. To avoid the effects of this rule, David set up what the FDIC calls a sham transaction whereby his mother Lorraine obtained all the stock in Connaught. Later, in an attempt to further disguise David's connections with Connaught, Lorraine transferred the stock to Paul Freitag, a close friend of David's.

On top of this the FDIC claims that David began dealing with Ichelson. David promised Ichelson payments, leases, and employment opportunities for Ichelson's son all in return for Ichelson's help in ensuring that Gateway Capital won the bidding process for the Merit Loans. This help took the form of confidential information and Ichelson causing some of the entities he controlled to file bankruptcy before the auction, thereby artificially reducing the apparent value of the loans. These dealings were in direct violation of RTC requirements that no bidder could communicate with any debtor without RTC consent or enter into business relationships with any debtor.

With this elaborate scheme in place, Gateway Capital entered the bidding process. The defendants received a bid package sent by the RTC from Washington, D.C. In accordance with the rules provided in the package, Gateway returned certifications and agreements to the RTC and sent credit histories to locations directed by the RTC. Based on the representations in these documents, the RTC informed Gateway Capital that it was eligible to bid in the auction. Gateway Capital sent in a bid of $66,750,000. As this was the highest bid, Gateway Capital was successful in purchasing the loans. The deal was closed in Washington, D.C., in January of 1993.

The scheme, though initially successful, was not flawless. Indeed, the DOJ opened an investigation into the bidding process. In connection with this investigation an FBI agent and a DOJ attorney interviewed Martin Blumenthal in July of 1994. Blumenthal, a Contractor Ethics Program Manager at the RTC, was told that an unnamed bidder had engaged in prohibited contact with the largest borrower involved in the loans being auctioned. He was also asked to comment on the possible ramifications on the auction process if David Wabick had been involved with Connaught, which had been involved in defaults on loans held by the RTC and the FDIC. After the interview Blumenthal did not contact the RTC's Office of Inspector General even though he had the authority to forward the information to that office. The DOJ investigation continued and on June 12, 1997, David Wabick was indicted.

More than four years later, the FDIC finally initiated this action against the defendants in the district court on November 9, 2001. The suit was brought pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), which provides that all cases brought by the FDIC are deemed to arise under the laws of the United States. 12 U.S.C. § 1819(b)(2)(a). The FDIC

asserted claims for conspiracy to commit fraud, common law fraud, breach of contract, and unjust enrichment. The district court recognized that there was a potential statute of limitations problem because FIRREA provides the following rule for determining the limitations period:

> Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the [FDIC] as conservator or receiver shall be—
>
> > (i) in the case of any contract claim, the longer of—
> >
> > > (I) the 6-year period beginning on the date the claim accrues; or
> > >
> > > (II) the period applicable under State law; and
> >
> > (ii) in the case of any tort claim . . . the longer of—
> >
> > > (I) the 3-year period beginning on the date the claim accrues; or
> > >
> > > (II) the period applicable under State law.

12 U.S.C. § 1821(d)(14)(A). Using federal common law choice-of-law rules, the district court determined that the applicable state law was that of Washington, D.C. Because the D.C. statute of limitations provided a period of three years for both tort and contract claims, the district court found that the default limitations provided in FIRREA were longer and therefore applicable here. The district court held on a motion to dismiss that the tort claims (fraud and conspiracy to commit fraud) were barred by the three-year limitations period. As for the contract claims (breach and unjust enrichment) the district court recognized that there was a question of when the injury was or should have been discovered that could be dispositive under the six-year limitations period. The court therefore ordered the FDIC to submit factual submissions

under Federal Rule of Civil Procedure 56(e) and considered the issue as a motion for summary judgment. In the end the district court held that the injury should have been discovered at the time of the DOJ interview with Blumenthal, and the contract claims were therefore barred by the six-year limitations period. The FDIC now appeals to this court the rulings on both the tort and contract claims.

## II.  Discussion

The FDIC argues that the district court chose the wrong statute of limitations. In the FDIC's view the district court should have applied Illinois' choice-of-law rules because the district court was located in Illinois. In Illinois the statute of limitations is considered purely procedural and therefore the Illinois statute of limitations would automatically apply. *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 351-52 (2002). The district court rejected this argument and instead applied federal common law in choosing which statute of limitations was applicable.

According to the parties, the starting point for us is the *Erie* doctrine, which provides generally that a federal court is not authorized to apply a different substantive law in a diversity case from the law that a state court would apply were the case being litigated in a state court instead. Under this doctrine it is well established that in diversity cases state law is the appropriate source for choice-of-law rules. *Klaxon Co. v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487 (1941). And generally speaking, the *Erie* doctrine applies to non-diversity cases where state law supplies the rule of decision. *Zapata Hermanos Sucesores, S.A. v. Hearthside Bakery Co., Inc.*, 313 F.3d 385, 390 (7th Cir. 2002). But the question the parties present to us is whether the *Erie* doctrine requires non-diversity

application of state choice-of-law rules. The FDIC correctly identifies a split among the federal circuits on this issue. *Compare A.I. Trade Finance, Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454 (D.C. Cir. 1995) (applying state choice-of-law rules in non-diversity case) *with Edelmann v. Chase Manhattan Bank, N.A.*, 861 F.2d 1291 (1st Cir. 1988) (applying federal common law choice-of-law rules in non-diversity case). It then contends that we should join the ranks of the D.C. Circuit in choosing state law as the appropriate source of law. The defendants, not surprisingly, suggest that we join the other side of the split—something we have arguably already done in *Resolution Trust Corp. v. Chapman*, 29 F.3d 1120 (7th Cir. 1994).[2]

---

[2] In *Chapman* we explained as follows:

> What law Illinois courts would choose is, however, irrelevant. This is not a diversity case, where *Erie* would require the forum court to apply the whole law of the state, including its choice of law principles. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 85 L. Ed. 1477, 61 S. Ct. 1020 (1941). It is a suit by a federal agency invoking federal jurisdiction per 12 U.S.C. § 1441a(l)(1), which says that suits to which the RTC is a party "shall be deemed to arise under the laws of the United States". Federal law may well look to state law for substantive principles, see *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 727-29, 59 L. Ed. 2d 711, 99 S. Ct. 1448 (1979), but which law to select is itself a question of federal law, as *Kimbell Foods* and *O'Melveny & Myers* [*v. FDIC*, 512 U.S. 79 (1994),] show. The Supreme Court in *O'Melveny & Myers* did not ask what law a state court would have selected; it approached the question as one for independent decision.

29 F.3d 1120, 1124 (1994). The primary holding of *Chapman*, which is not relevant to this case, was later overruled by *Atherton v. FDIC*, 519 U.S. 213 (1996). The ruling on choice-of-law, however, presumably remains controlling precedent.

As interesting as this circuit split may be, and as much as the parties have to say about it, it simply is not implicated by the case before us. What the parties fail to recognize is that *Erie* questions about federal common law only arise when we are faced with a legislative gap where Congress declined to address certain questions of law. We have no such gap here. The relevant statutory provision reads:

> Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the [FDIC] as conservator or receiver shall be—
>
> > (i)  in the case of any contract claim, the longer of—
> >
> > > (I)  the 6-year period beginning on the date the claim accrues; or
> > >
> > > (II) the period applicable under State law; and
> >
> > (ii) in the case of any tort claim . . . the longer of—
> >
> > > (I)  the 3-year period beginning on the date the claim accrues; or
> > >
> > > (II) the period applicable under State law.

12 U.S.C. § 1821(d)(14)(A). As we read this provision it contains an explicit direction of where to find the appropriate law. The question we must answer—one of statutory interpretation—is therefore distinct from any questions about the application of the *Erie* doctrine. To borrow the language of the Supreme Court in *Richards v. United States*:

> [B]ecause the issue of the applicable law is controlled by a formal expression of the will of Congress, we need not pause to consider the question whether the conflict-of-laws rule applied in suits where federal jurisdiction rests upon diversity of citizenship shall

> be extended to a case such as this, in which jurisdiction is based upon a federal statute. In addition, and even though Congress has left to judicial implication the task of giving content to its will in selecting the controlling law, because of the formal expression found in the Act itself, we are presented with a situation wholly distinguishable from those cases in which our initial inquiry has been whether the appropriate rule should be the simple adoption of state law.

369 U.S. 1, 7 (1962) (footnotes omitted).

Where Congress tells us which laws to look to we are not authorized to disregard that directive. Under the statute before us Congress has directed that for each type of claim we have two possible sources for the limitations period: the period provided in the federal statute (we will refer to this as the "federal default period") and the period applicable under state law (we will sometimes refer to this as the "the state alternative period"). We are to choose whichever period is longer. Our first step is to identify the "period applicable under state law." To answer the question of what period is applicable under state law, we need only imagine what would have happened if this case had been brought in state court. If this case had been brought in state court—in this case Illinois—the Illinois choice-of-law laws would have applied and the period applicable under that law would be the one provided in Illinois' statute of limitations. *Belleville Toyota, supra.*

The logic of this approach is compelling. In determining what period is "applicable under state law," we simply and logically ask which period would apply under state law. The parties spend their entire briefs arguing about which law we should look to in choosing the appropriate period; but the statute answers this question in plain English: "state law." The parties' arguments stem from

their misconception that the provision is silent on choice-of-law. The parties seem to ignore the "under state law" part of the provision: in determining which period is applicable they look first to federal principles about which choice-of-law rule to apply (they disagree about this—the FDIC thinks federal principles require state choice-of-law rules and the defendants think federal principles require federal choice-of-law rules); then they apply that choice-of-law rule to determine which state law is applicable in determining the appropriate period. We say this ignores the term "under state law" because choice-of-law rules—state or federal—will always get us to some state law period in the end regardless of that phrase. The period the parties' method produces as the state alternative period is the same as the period that would have resulted had the statute been completely silent on the question of statute of limitations. It is also the same state alternative period that would have resulted if, after listing the federal default period, Congress had said, "or the period otherwise applicable." In those cases Congress would have been silent as to what principles should guide the courts in determining the applicable period, thus implicating a choice between *Erie* and federal common law. But here Congress modified "applicable" with "under state law" and there is therefore no legislative gap—our applicability analysis is confined to state law.

The failure of both parties to at least address this analysis is surprising given that the result we reach is entirely consistent with the conclusion reached, albeit less explicitly, by the Eighth Circuit in *Federal Deposit Insurance Corp. v. Nordbrock*, 102 F.3d 335 (8th Cir. 1996), a case dealing with this exact question. In fact, as far as we can tell, the Eighth Circuit is the only other federal appeals court to have addressed this precise issue and in *Nordbrock* they concluded, apparently with little hesitation, that the statute directs the courts to state choice-of-law rules:

> In order to make this determination [about whether the federal default period for contract claims was longer or shorter than the period applicable under state law], we must consider the statute of limitations period *otherwise applicable under Nebraska law*. 12 U.S.C. § 1821(d)(14)(A)(i)(II). This requires an examination of Nebraska's choice of law principles.

*Id*. at 337 (emphasis added). This is all the majority in *Nordbrock* says about the issue. Most notably there is no reference to *Erie* or *Klaxon* or any of the other cases the parties before us are arguing about. The only citation they have for their conclusion is the statutory provision itself. Though the majority never explicitly laid out the rule that we adopt today, we think it clear that the court was in fact basing its conclusion on the statutory phrase "applicable under state law."[3] Still the FDIC cites *Nordbrock* only as support for the proposition that we should always apply state choice-of-law rules under the *Erie* doctrine, and the defendants do not discuss *Nordbrock* at all. But the failure of the parties to interpret a statute correctly would not excuse such inaction on the part of the court; and as we conclude that the statute requires us to look to state law rules in choosing the appropriate period, we are in complete agreement with the court in *Nordbrock*. The appropriate period is therefore the period that would be applicable under Illinois choice-of-law principles.

Having resolved the choice-of-law question, there is little more for us to do. As we have said, the statute of limitations is procedural under Illinois choice-of-law

---

[3] Had the parties before us not focused their attention entirely on the *Erie* question, we would likely have dealt with this straightforward statutory interpretation in a similarly brief fashion.

principles, and therefore the Illinois statute of limitations automatically applies. Illinois law provides a ten-year limitations period for the contract actions and a five-year period for the tort actions. 735 ILCS 5/13-206 and 5/13-205. Both of these periods are longer than the federal default periods provided in the statute (six years for contracts and three years for torts). Therefore, the Illinois limitations periods are the appropriate periods to apply to this case. Unquestionably, the contract claims survive under the ten-year limitations period (the deal was closed in 1993 and the suit was brought in 2001), and those claims should be remanded for consideration on the merits.

As for the tort claims, it is not clear at this point whether they are barred by the five-year limitations period or not. The district court, applying a three-year period, held the claims to be barred on a motion to dismiss. In contrast to this was the district court's decision on the contract claims: applying the six-year federal default period, the district court converted the motion to dismiss to a motion for summary judgment and required the FDIC to make necessary factual submissions. The reason for the conversion was that the six-year period fell into a gray area on the question of when the injury was discovered. Seven years prior to the filing we find the Blumenthal interview and four years prior to the filing we find the indictment of Wabick. No one has argued that the FDIC should have known about the injury prior to the Blumenthal interview and no one could possibly argue that any lack of knowledge position can be maintained after Wabick's indictment. Therefore, we have a disputable area between seven and four years prior to the filing. The district court properly reasoned that knowledge within this period could not be determined on a motion to dismiss. The FDIC submitted very little in the way of factual material to aid the court in making it's determination on the converted motion for summary

judgment. The district court correctly concluded that based on the submissions there was no way the FDIC could show a lack of knowledge after the Blumenthal interview under the federal discovery rule. As we have said, this was for the contract claims. Of course now the question is moot for the contract claims since we have held that they are subject to the ten-year limitation, but a virtually identical question now arises for the tort claims. The tort claims, now subject to the five-year Illinois limitation, fall into the gray area and we must determine whether there is any way the FDIC lacked knowledge under the Illinois discovery rule after the Blumenthal interview. We question whether the outcome will be any different than it was for the contract claims. Nonetheless, procedural fairness requires us to remand the case for consideration under the summary judgment standard. These are different claims than the contract claims and a different jurisdiction's limitations period is being applied. That being the case, the FDIC's tort case cannot be limited to the facts and arguments as submitted in support of their contract case. It is at least possible, though perhaps unlikely, that the FDIC could produce factual submissions relevant to when it discovered its tort injury that were not relevant (or simply that the FDIC failed to submit) to when it discovered the contract breach. We therefore remand the tort claims for further consideration on whether they are barred by the five-year Illinois statute of limitations.

## III.  Conclusion

Although the parties have framed this as a question of what law to apply in filling legislative gaps, there is no such gap in the legislation at issue here. Section 1821(d)(14)(A) tells us to look to state law in choosing the applicable limitations period. We read this as prescribing

the appropriate choice-of-law principles for a court to use. The district court should therefore have applied the choice-of-law principles of the forum state—here Illinois— in determining which limitations periods applied to the FDIC's claims. Under Illinois law, the Illinois limitations periods apply. Those periods are five years for the tort claims and ten years for the contract claims. We therefore REVERSE and REMAND the contract claims for consideration on the merits and REMAND the tort claims for further consideration as to whether they are barred by the five-year Illinois limitations period.

A true Copy:

      Teste:

                _____
                *Clerk of the United States Court of*
                *Appeals for the Seventh Circuit*